UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOIL FRIENDS LLC, a Michigan limited
liability company, BENJAMIN MARTIN, an
individual, and SARAH MARTIN, an
individual,

Honorable:

               Plaintiffs,

Case No:1:23-cv-1267

v.

COMSTOCK CHARTER TOWNSHIP, a
Michigan municipal corporation,
KALAMAZOO AREA BUILDING
AUTHORITY, a Michigan municipal
corporation or agent of Comstock Township,
JODI STEFFORIA, RANDY THOMPSON,
SCOTT HESS, MATTHEW MILLER,
JENNIFER JONES-NETWON, RON
SPORTEL, ALLAN FAUST, JEFF AMPEY,
LARRY NICHOLS, PATRICK HANNA,
CLYDE SHERWOOD III, ROXANNE
SEEBER, and CATHERINE KAUFMAN,
individuals,

**COMPLAINT**

               Defendants.

---

KUSTRA & BLOOM PLC
Steven J. Kustra (P79002)
Jeffrey M. Bloom (72343)
Attorneys for Plaintiffs
21002 Mack Avenue
Grosse Pointe Woods, MI 48236
(313) 586-4444
skustra@kustrabloom.com
jbloom@kustrabloom.com

## **COMPLAINT**

NOW COME Plaintiffs SOIL FRIENDS LLC, BENJAMIN MARTIN, and SARAH MARTIN (collectively "Plaintiffs"), by and through their attorneys, KUSTRA & BLOOM PLC, and for their Complaint against Defendants, COMSTOCK TOWNSHIP, KALAMAZOO AREA BUILDING AUTHROITY, JODI STEFFORIA RANDY THOMPSON, MATTHEW MILLER, SCOTT HESS, JENNIFER JONES-NETWON, RON SPORTEL, JEFF AMPEY, LARRY NICHOLS, PATRICK HANNA, CLYDE SHERWOOD III, MIKE ALWINE, ROXANNE SEEBER, and CATHERINE KAUFMAN, states as follows:

### **THE PARTIES**

1.      Soil Friends, LLC ("Soil Friends") is a Michigan limited liability company with its principal place of business at 1701 N 33rd St, Comstock Township, Kalamazoo County, Michigan located in the Western District of Michigan.

2.      Benjamin Martin is the owner of Soil Friends, LLC who lives in Comstock Township, Kalamazoo County, located in the Western District of Michigan.

3.      Sarah Martin is the owner of Soil Friends, LLC who lives in Comstock Township, Kalamazoo County, located in the Western District of Michigan.

4.      Comstock Charter Township ("Comstock Township") is located in Kalamazoo County, Michigan with its offices located at 5858 King Highway, Kalamazoo, MI 49048.

5.      Kalamazoo Area Building Authority ("KABA") is located in Kalamazoo County, Michigan with its offices located at 2322 Nazareth Road, Kalamazoo, MI 49048.

6.      Jodi Stefforia is the Community Development Director for Comstock Township located in Kalamazoo County, Michigan with an office located at 5858 King Highway, Kalamazoo, MI 49048.

7.      Randy Thompson is the Township Supervisor for Comstock Township located in Kalamazoo County, Michigan with an office located at 5858 King Highway, Kalamazoo, MI 49048.

8.      Scott Hess is the Township Superintendent for Comstock Township located in Kalamazoo County, Michigan with an office located at 5858 King Highway, Kalamazoo, MI 49048.

9.      Matthew Miller is the Communications Development Coordinator for Comstock Township located in Kalamazoo County, Michigan with an office located at 5858 King Highway, Kalamazoo, MI 49048.

10.     Jennifer Jones-Newton is the Chair and Member of the Comstock Township Planning Commission located in Kalamazoo County, Michigan with an office located at 5858 King Highway, Kalamazoo, MI 49048.

11.     Ron Sportel is the Vice Chair and Member of the Comstock Township Planning Commission located in Kalamazoo County, Michigan with an office located at 5858 King Highway, Kalamazoo, MI 49048.

12.     Allan Faust is the Secretary and Member of the Comstock Township Planning Commission located in Kalamazoo County, Michigan, with an office located at 5858 King Highway, Kalamazoo, MI 49048.

13.     Jeff Ampey is a Member of the Comstock Township Planning Commission located in Kalamazoo County, Michigan, with an office located at 5858 King Highway, Kalamazoo, MI 49048.

14.     Larry Nichols is a Member of the Comstock Township Planning Commission located in Kalamazoo County, Michigan, with an office located at 5858 King Highway, Kalamazoo, MI 49048.

15.     Patrick Hanna is a Member of the Comstock Township Planning Commission located in Kalamazoo County, Michigan, with an office located at 5858 King Highway, Kalamazoo, MI 49048.

16.     Clyde Sherwood III is a Member of and the Township Liaison for the Comstock Township Planning Commission located in Kalamazoo County, Michigan, with an office located at 5858 King Highway, Kalamazoo, MI 49048.

17.     Mike Alwine is a building official for Kalamazoo Area Building Authority located in Kalamazoo County, Michigan, with an office located at 2322 Nazareth Road, Kalamazoo, MI 49048.

18.     Roxanne Seeber is an attorney of Bauckham, Sparks, Thall, Seeber & Kaufman, P.C. ("BSTSK") and agent of Comstock Township located in Kalamazoo County, Michigan, with an office located at 470 W Centre Ave, Portage MI, 49024.

19.     Catherine Kaufman is an attorney of BSTSK and agent of Comstock Township located in Kalamazoo County, Michigan, with an office located at 470 W Centre Ave, Portage MI, 49024.

## JURISDICTION AND VENUE

20.     This action arises under the United States Constitution and 42 U.S.C. §§1983 and 1985.

21.     The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

22.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

23.     This Court has the authority to grant declaratory relief under 28 U.S.C §§ 2201 and 2202.

24.     This Court has the authority to grant injunctive relief by Federal Rules of Civil Procedure 57 and 65.

25.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because (i) Comstock Township is located in Kalamazoo County which is in this judicial district, and (ii) the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

26.     Plaintiffs' claims for attorneys' fees and costs are authorized by 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

**Ben Martin and His Family Farm, Soil Friends**

27.     Soil Friends is a 22-acre family farm and cidery located in Comstock Township Michigan.

28.     Soil Friends' primary operation is the production of hard cider, with at least a portion of the ingredients grown on site. Additionally, the farm produces pumpkins, squash, lavender, jalapenos, and strawberries among other crops. It also raises goats and chickens.

29.     Soil Friends' business includes three operations licensed, or otherwise certified, by the State of Michigan:

(a)    a winery and tasting room licensed by the Michigan Liquor Control Commission ("MLCC") (MLCC licenses attached as Exhibit 1)

(b)    a farm market pursuant to Michigan's Right to Farm Act and which is compliant with the Michigan Department of Agriculture Rural Development's ("MDARD") Farm Market Generally Accepted Agricultural Management Practices ("GAAMPS")

(c)    an MDARD licensed Retail Food Establishment. (Retail Food Establishment License attached as Exhibit 2)

30.    These licenses and certifications allow Soil Friends to make and sell wine and cider to customers; grow and sell produce and farm products to customers and sell for on premises consumption.

31.    While Soil Friends' winery license is issued by MLCC, a state of Michigan agency, Comstock Township recommended approval of the license by a 7-0 vote on October 17, 2017. Exhibit 3.

32.    At the time of the winery application, Michelle Mohney, the Comstock Township Clerk, provided a memorandum to the Township Board wherein she stated that the Planning and Zoning Administrator, Jodi Stefforia, determined that the small winemaker license was "an accessory to the existing use of the property and/or 'similar bona fide agricultural enterprise or use of land and structures'." Exhibit 4.

33.    MLCC issued the Soil Friends winery and an On-Premises Tasting Room Permit December 19, 2018.

7

34.     MLCC further issued Soil Friends two (2) permits for Outdoor Service Areas on June 8, 2018, and on May 29, 2019, respectively.

35.     Thereafter, Comstock Township no longer had any legal or statutory authority to limit Soil Friends' alcohol sales or related operations due to state law preemption.

**Comstock Township's Initial Concerns with Soil Friends Red Barn**

36.     Over the course of 2019, Soil Friends built a new red barn on their property to further support the company's operations.

37.     On April 1, 2022, Comstock Township notified Soil Friends by email that it was required to obtain a special exception before it was allowed to hold private events and parties in a barn on its property. Exhibit 5.

38.     The e-mail, sent by Jodi Stefforia on behalf of Comstock Township, contended that by hosting such activities, the barn became an "event barn" under the ordinance. *Id*.

39.     Furthermore, the email stated that use of the barn warranted a review to ensure compliance with applicable building codes. *Id*.

40.     A further email from Comstock Township, sent by Kalamazoo Area Building Authority building official Mike Alwine on April 1, 2022, stated that Soil Friends proposed use "would constitute a Change of Occupancy category" requiring a "Code Compliance plan design by a registered design professional" to ensure that

8

any necessary changes comply with the code provisions for "life and fire safety, egress, ADA compliance, plumbing fixture compliance, etc." *Id.*

41.     On April 1, 2022, Soil Friends replied to the email agreeing to "remove it from [Soil Friends] offering from the time being and not hold private events until [Soil Friends] have gone through the process necessary to do so." *Id.*

42.     At no point in time did Soil Friends use any of its barns to host parties, weddings, or private events. Exhibit 6, Affidavit of B. Martin at ¶8.

43.     Rather, the barn had only been used as a farm market and for cider tastings, consistent with state law, state regulations and licenses.

44.      But, nowhere in Comstock Township's letter or correspondence did it advise Soil Friends that the remainder of its business operations were not allowed. The letter does not mention nor discuss food, alcohol sales, or live music.

45.     Following Comstock Township's letter, Soil Friends retained architect Jeff Crites of Slocum & Associates to assist them with seeking approval for the change of occupancy as to the red barn.

46.     The architectural drawings for the red barn were designed according to A2-F2 regulations.

47.     An A2 assembly structure contemplates occupancy usage intended for food and/or drink consumption, including but not limited to banquet halls, casino

9

(gaming areas), nightclubs, restaurants, cafeterias and similar dining facilities (including associated commercial kitchens), and taverns and bars.

48.     An F2 low-hazard factory industrial structure contemplates factory industrial uses and occupancies that involve the fabrication or manufacturing of noncombustible materials that during finishing, packing, or processing do not involve a significant fire hazard and shall include beverages: up to and including 16-percent alcohol.

49.     Upon information, knowledge, and belief, an A2 assembly and occupancy use would allow Soil Friends to operate the barn as a farm market, an on-premises winery/cidery tasting room, and as a wedding/event space.

50.     On or about September 19, 2022, Soil Friends submitted their architectural drawings and affidavit for building intended occupant load to Mike Alwine.

51.     The affidavit for building intended occupant load outlined that the total number of persons in the building for any use would not exceed ninety-nine (99).

52.     On September 20, 2022, Mike Alwine sent an e-mail to Soil Friends and their architect stating:

> I have reviewed the code compliance plan for the proposed change of occupancy project located at 1701 N 33rd Street. My comments are included below:
>
> 1. Drinking fountain to be provided in accordance with Table 403.1 2018 MPC.

2. I find the request for intended building occupancy affidavit acceptable, occupant load to be posted on the premises in accordance with 2015 MBC.

3. Accessible route to be provided from public parking area to public use area(s) and to be detailed on site plan.

Exhibit 7.

53.     Based on the representations made by Mike Alwine, Soil Friends was confident that with the proper changes implemented into their design, both KABA and Comstock Township would grant them the special exception and approve usage of the red barn.

**Comstock Township's Citation to Soil Friends and Complete Shutdown of the Business**

54.     On October 19, 2022, Comstock Township issued a citation to Soil Friends alleging that it did not have "zoning approval or permits for how barn is being used to serve Food/alcohol/Live Music[sic]." Exhibit 8.

55.     The citation did not reference the prior correspondence related to "barn events" and, instead, was a pivot from the Township to a completely new issue.

56.     The citation did not reference any other operations of Soil Friends and was specifically related to activities occurring in the red barn.

57.     On October 20, 2022, Soil Friends, through their Facebook account, posted a picture of Comstock Township's signage condemning their red barn pursuant to section 108.1.1 of the property maintenance code. Exhibit 9.

58.     Soil Friends Facebook post stated, in relevant part:

[T]he farm market building isn't able to be open. This is what horrendous leadership looks like from our elected officials, someone had a hair up their you know what, and needed a power grab! You don't go slapping orange stickers without talking and working issues out with local businesses, no call or visit to even try and work together! We have email correspondence April 1 that we would continue operations as is until we were permitted to have wedding and private events, as we are currently working through jumping all the hoops to get that done and in the midst of our fall season, then blindsided by this [.] Most of the entire township board needs rebuilt and I will be part of working with other like minded community members to make this a better township to live, enjoy and do business in.

*Id.*

59.     On October 27, 2022, Comstock Township's Planning Commission held a meeting in which the issue of amending the current ordinances to allow for agritourism in the agricultural district should be considered. The uses considered included a cider mill, corn maze, and other activities. Exhibit 10.

60.     Patrick Hanna, a member of Comstock Township's Planning Commission inquired about whether this would include the operation of a restaurant and stated that he had patronized Soil Friends "before he knew it was in violation of Township ordinances." *Id*.

61.     Catherine Kaufman, attorney for Comstock Township, suggested the Farm Market GAAMPs be the starting point for zoning language and additional uses further stating, "The Township does not have to allow everything happening at [Soil Friends]." *Id*.

12

62.    When asked what is happening at Soil Friends that the ordinance may or may not address, Jodi Stefforia answered, "the hot food, alcohol sales, bar and live music and possibly other activities." *Id*.

63.    On October 31, 2022, Soil Friends held a meeting with officials of both Comstock Township and the Kalamazoo Area Building Authority to discuss an alleged noise complaint, alleged violations pertaining to "festivals" being held on the property, and the condemnation of the red barn that served as a farm market/on-premises tasting room.

64.    Upon information, knowledge, and belief, Ben and Sarah Martin, on behalf of Soil Friends, and Jodi Stefforia, Randy Thompson, Scott Hess, and Tim Smith, in their official capacities as employees of Comstock Township, and Mike Alwine, in his capacity as an employee of Kalamazoo Area Building Authority, were present.

65.    Upon information, knowledge, and belief, Tim Smith video recorded the meeting.

66.    In the meeting, Jodi Stefforia implied that Soil Friends had stretched the limits of the Township's definition of "farm market" by having music and that Soil Friends winery/cidery was not permitted.

67.     Furthermore, Randy Thomspon referenced Soil Friends October 20, 2022, Facebook post insinuating that such posts damage the reputation of Comstock Township and its officials and should be stopped.

68.     At the end of the meeting, it was resolved by Soil Friends that they would cease operations in the red barn and continue to provide information to Comstock Township and the officials present, including Ms. Jodi Stefforia, to work through the requirements needed for usage of the red barn and to bring Soil Friends property into compliance with zoning regulations.

69.     On or about November 18, 2022, an informal hearing pertaining to Comstock Township's citations was held wherein a discussion occurred regarding Soil Friends' operations, but Magistrate Schaberg noted that these issues were beyond the scope of the informal hearing.

70.     The informal hearing was attended by Benjamin Martin for Soil Friends and Ms. Roxanne Seeber, attorney for Comstock Township, on behalf of Comstock Township.

71.     Michigan law provides that "[a]t an informal hearing, the defendant shall not be represented by an attorney and the plaintiff shall not be represented by the prosecuting attorney or attorney for a political subdivision." MCL 600.8719.

72.     Despite the statutory prohibition, Comstock Township Attorney Roxanne Seeber of BSTSK attended the informal hearing on behalf of Comstock Township.

73.     At the informal hearing Magistrate Schaberg imposed a $25.00 fine upon Soil Friends for the citation.

74.     In addition to her illegal attendance, Comstock Township Attorney Roxanne Seeber of BSTSK also drafted the order which was adopted in total by Magistrate Judge Schaberg.

75.     This order went well beyond the citation and was written by Seeber as a permanent injunction.

76.     The order essentially closed Soil Friends' entire business without any due process.

77.     The order explicitly prohibited the following operations:

(a)     food, alcohol and music inside the barn,

(b)     food, alcohol and music outside the barn,

(c)     the sale of crops grown on the property,

(d)     the sale of Christmas trees,

(e)     the sale of chicken eggs,

(f)     farm tours,

(g)     kids' pictures with Santa Claus,

15

(h)   hayrides,

(i)   you-pick sales and numerous other common farm activities.

Exhibit 11.

78.   The Magistrate Judge far exceeded his authority and did not have the jurisdiction to enter such an expansive order as drafted by Seeber.

79.   Comstock Township did not have the authority to restrict the service of food, alcohol and to have live music, because such authority is governed by the State of Michigan, pursuant to the MLCC winemaker license, because Michigan law preempted any local ordinance with regard to these matters.

80.   Comstock Township did not have the authority to restrict other farm related activity where rights are preserved by Michigan's Right to Farm Act.

81.   On November 30, 2022, Soil Friends posted to Facebook stating, in relevant part:

> Here's a few ideas we should all talk about for the best interest in our township just for starters[.]
>
> Community development director is a hired position – We should ask what happened with her position in previous townships, whats [sic] the track record? Many of us believe it's the best interest for business owners in the community, that she pack her boxes and go. It's a fireable position.
>
> Township Supervisor & Superintendent
> Randy [Thompson] – you took an oath to protect the health, safety and welfare for those in this community – Scott [Hess] you were hired. You both clearly just let my family and our patrons down on all of these! You guys had your attorney write an order

16

that the magistrate stamped in order to shut down a farm that provides the community access to fresh food and enjoyment. You have blocked us from buying permits for improvements and also allowed harassment to other local business leaders. Based upon community comments here, not grown our community for the better clearly you see the comments about the township on these post. It's not looking good boys I hope your not considering reelection. You would be doing us all a favor if you packed your boxes as well, I know the money helps – our community would rather you it if it expedited the process of you getting out of the way so real leaders can get to work!

Exhibit 12.

82.     On December 2, 2022, Soil Friends, through counsel, filed a motion for reconsideration of Magistrate Judge Schaberg's Order.

83.     On December 2, 2022, Matthew Miller, on behalf of Comstock Township, published and posted a Statement (the "Statement") on their website titled "FOR IMMEDIATE RELEASE: Comstock Charter Township's statement on Soil Friends Hard Cider Company." Exhibit 13.

84.     The Statement contains numerous false allegations, including:

At the time the township approved a liquor license, it was only for making wine ("small winemaker") out of fruit that was supposedly grown from the farm itself and too ugly to sell. The "tastes" were to be served out of the shipping container, which was the sole enclosed shelter on the property at the time. The township determined that the small winemaker and tasting was accessory to the farm use and did not require a special use approval for "tasting room and sales."

Thereafter, without notice to the township and without permission from the township, Soil Friends added an "outdoor

17

service area"; a "manufacturer/direct shipper" license, a "salesperson" license and an "on-premises tasting room permit". The addition of a tasting room and on-site sales requires a special use permit from the Township and adherence to the parameters of the Ordinance. Nevertheless, this permit was never applied for and uses continued to expand.

Soil Friends has not applied for or obtained Township permission for a brewery, food sales, or the manufacture and distribution of hard cider. *Id.*

85. The Statement is provably false at the time it was issued, because Soil Friends had the required approval for their winery/cidery operation from Comstock Township that was issued in 2017 and a winery/cidery license from MLCC.

86. On December 5, 2022, Comstock Township held a board meeting in which numerous individuals complained about Comstock Township's treatment and closure of Soil Friends business.

87. At the same meeting, Township Attorney Catherine Kaufman of BSTSK stated that Soil Friends additional uses were not covered by their license issued by MLCC.

88. Catherine Kaufman's statements were false, as state law preemption is clear on the matter.

89. Ms. Kaufman further stated that Magistrate Judge Schaberg's order was applicable as it came from the court, neglecting the important fact that the order was drafted by her colleague at BSTSK Attorney Seeber, and that the order far exceeded

18

the jurisdictional authority of the Magistrate and the legal authority of Comstock Township.

90.    Ms. Kaufman further indicated that Comstock Township's approval of Soil Friends' MLCC liquor license was conditioned solely under a Right to Farm accessory agricultural use, which is false because accessory use is not required, and that condition was not included in the approval document provided to the MLCC.

91.    On December 7, 2022, Ms. Jodi Stefforia, on behalf of Comstock Township, sent Soil Friends a letter summarizing the zoning approvals and necessary information required for bringing Soil Friends operations into compliance. Exhibit 14.

92.    In the letter, Ms. Jodi Stefforia states, in relevant part:

> The Zoning Ordinance presently defines cidery and lists it as a use allowed in the LM, Light Manufacturing and M, Manufacturing Districts. The AGR, Agriculture-Residential District allows a winery with special exception use approval. It will take a text change to the ordinance to list cidery as a use in the AGR and/or revision of the definition of cider and/or winery and related amendments.

> Notwithstanding the past action by the Township Board for a small winemaker license allowing you to make wine out of fruit grown on your farm in the shipping container, moving the winery operation into the new barn is a change of use and an expansion requiring special exception use and site plan approval by the Planning Commission. You are presently making hard cider with cider sourced from an offsite farm – a cidery is not presently listed as an allowed use in the zoning district.

*     *     *

> The activities occurring on the property beyond the growing of crops and the farm market, as defined by GAAMPs are collectively considered agricultural-tourism/agri-tourism/agri-tainment. These uses include cut Christmas tree sales, 5k runs, visits and photos with Santa, hayrides, etc. The zoning ordinance does not provide for this type of use in the AGR, Agriculture-Residential District. *Id.*

93.     On December 7, 2022, Ben Martin responded to Comstock Township's letter through a Facebook post, stating:

> My township officials are literally concerned about selling cut Christmas trees and Santa visiting the farm [.] This has got to be a joke [.]

Exhibit 15.

94.     Due to Soil Friends complete shutdown by the District Court and the District Court's failure to consider Soil Friends motion for reconsideration, Soil Friends filed a complaint for superintending control over the 8th District Court on January 17, 2023, in the 9th Circuit Court of the County of Kalamazoo. Exhibit 16.

95.     The complaint for superintending control went unchallenged at the Circuit Court.

96.     On February 21, 2023, a Stipulated Order was entered amending the District Court's previous Order continuing the ban of usage on the red barn but stating, in relevant part:

> • Defendant may engage in activities allowed under the Farm Market GAAMP and the Michigan Liquor Control Code related to a small wine maker…Such activities may include sale of produce, sale of wine/cider and the sale of food among other

activities allowed by the Michigan Liquor Control Code and the Farm Market GAAMP.

- Within twenty-one (21) days, Soil Friends shall submit an application for special exception with the Township for use of the red barn for a winery tasting room and wine production space. The Township shall review the application in good faith and process the application in a timely manner without undue delay.

- If either party fails to abide by the terms of the Order, upon request, the Court will enter an Order requiring the offending party to appear before the Court at a specified date and time to show cause why that party should not be found in contempt of the compliance provisions of this Order and be punished therefore as allowed by law.

Exhibit 17.

**Comstock Township's Shifting Burdens on Soil Friends**

97.    On March 2, 2023, Jodi Stefforia sent Soil Friends an e-mail stating that Comstock Township had reviewed the submitted plan and related documents for Soil Friends special exception use and site plan approval request for usage of the red barn as a winery tasting room. Exhibit 18.

98.    The email included Comstock Township's Fire Marshall's comments and a checklist of missing and required information with all documentation required to be submitted twenty-one (21) days prior to the Planning Commission meeting. *Id*.

99.    Comstock Township's Fire Marshall, Michael Kessler, approved the recommendation with five (5) requirements including the installation of an automatic sprinkler system in the red barn for approval. *Id*.

21

100.   Soil Friends was quoted by an expert that the Fire Marshall's requirement for an automatic sprinkler system would cost Soil Friends in excess of $200,000.00 and that nothing in the fire code required these items.

101.   On April 13, 2023, a public hearing was held by the Planning Commission as to Soil Friends special use exception. Exhibit 19.

102.   A staff report prepared by Jodi Stefforia recommended postponing the decision despite the Stipulated Order requiring that Comstock Township proceed in good faith. *Id.*

103.   Despite Catherine Kaufman stating that "the request today is for approval to conduct in the red barn a tasting room and farm market", the Planning Commission denied Soil Friends special use exception on issues unrelated to the building including the adequacy of the well and septic and approval by the Road Commission for the current status of the driveway or a new driveway permit being provided. None of these issues related to the special exception use for the red barn. *Id*.

104.   On April 27, 2023, a Comstock Township Planning Commission meeting was held in which Soil Friends was on the agenda. Exhibit 20.

105.   At the start of the meeting, Patrick Hanna tabled a motion to remove item 5a from the agenda relating to the Special Exception Use & Site Plan Review

for Ben Martin/Soil Friends, LLC. The motion to strike Soil Friends from the agenda was passed by roll call vote. Exhibit 21.

106.   In the meeting, Catherine Kaufman asked for clarification as to why Soil Friends was stricken from the agenda, noting that Soil Friends had complied with the requests from the previous hearing and that the Stipulated Order required processing the request in a timely manner. *Id*.

107.   As a result of Catherine Kaufman's statements, the Planning Commission passed a motion to add Soil Friends back to the agenda and consider Soil Friend's special exception use and site plan review. *Id*.

108.   After lengthy discussion, the Planning Commission granted Soil Friends special exception use approval for the winery with tasting room subject to the following conditions:

- Hours are limited to 9 a.m. to 9 p.m. Monday through Sunday.
- No amplification of music outside the barn.
- No use of speakers outside the barn.
- No access to East Main Street.
- All required federal, state, county, and local licensing, and approvals.
- Annual review of the special exception use for three years with schedule of review may be amended.
- Lighting shall comply with the zoning ordinance.
- Any change in license type requires Planning Commission approval.
- Any change in production beyond a small winemaker license requires Planning Commission approval.

109.   The Planning Commission further granted site plan approval subject to the following:

- Fire Marshall approval.
- Road Commission of Kalamazoo County approval.

**Comstock Township's Continued Campaign to Prevent Soil Friends From Operating Their Business**

110.   On May 22, 2023, Soil Friends emailed Mike Alwine, building official for KABA, informing him that Comstock Township had approved Soil Friends special use exception and seeking what information would be required to be submitted to obtain building permits for the red barn. Exhibit 22.

111.   On May 23, 2023, Mike Alwine replied via email stating that Soil Friends would be required to submit a new application and plans specific for the use of a "wine tasting room" because the previous application was for "wedding venue/farm market". *Id*.

112.   The A2 occupancy use on Soil Friends' previous application for wedding venue/farm market would also apply to an on-premises wine tasting room.

113.   On or about June 8, 2022, Soil Friends was told by MLCC that an individual on behalf of Comstock Township informed MLCC that Soil Friends did not have approval to manufacture wine/cider in the red barn.

114.   Upon information, knowledge, and belief, Defendant Scott Hess, Comstock Township Superintendent, was the individual who made the complaint against Plaintiffs with the MLCC.

115.   The complaint with MLCC was false when made as Plaintiffs had been given approval to manufacture cider pursuant to the April 27, 2023 special exception use approval.

116.   On or about August 24, 2023, Plaintiffs sought to engage an engineer to assist it with meeting the requirements for the building permits and site plan approval for usage of the red barn.

117.   On or about September 1, 2023, Plaintiffs were informed that the engineer would no longer be willing to assist them based on conversations they had with building officials of Defendants KABA and Comstock Township.

118.   The engineer informed Plaintiffs that, based on their conversations with Defendants KABA and Comstock Township officials, Defendants would never approve any building permits to be issued to Plaintiffs because Defendants, including Comstock Township, did not like Ben Martin nor approve of the operations of Soil Friends.

119.   The engineer informed Plaintiffs that Defendants, including Comstock Township would make the cost of Soil Friends obtaining a building permit so cost

25

prohibitive that Soil Friends could not pursue their goal of opening a farm market/manufacturing facility in the red barn.

120.   Since the engineer's report Plaintiffs have not been able to conduct business on their winery/farm in any significant capacity, as Defendants have made the cost of doing business prohibitive and have failed to abide by the tenants of the law and due process.

**Plaintiffs Have Been Damaged by Defendants' Conduct**

121.   Plaintiffs have spent and committed considerable time, effort, and financial resources to building Soil Friends into a successful farm and cidery operation.

122.   Moreover, Plaintiffs have invested significant efforts into building business relationships with their customers, distributors, and sellers to continually provide a premium hard cider product.

123.   Soil Friends cider has been widely distributed across the State of Michigan with a lucrative business relationship with retailer Meijer, wherein Soil Friends is available in twenty (20) stores in Michigan.

124.   Defendants' complete shutdown of Soil Friends cidery operation in November 2022 resulted in a loss of over $60,000.00 in product spoilation alone.

125.    Furthermore, Defendants' complete shutdown of Soil Friends business in November 2022 resulted in Soil Friends being unable to conduct their farm market or to sell cut Christmas trees for the seasonal period.

126.    Defendants' published statements, containing widely inaccurate and provably false claims, tarnished the reputation of Soil Friends within the community and with its existing customers.

127.    Furthermore, the actions of Defendants including Comstock Township, KABA, and their officials acting under color of state law have jeopardized Soil Friends future business prospects, business relationships, and the overall financial viability of operating their farm and winery/cidery.

128.    Plaintiffs have been damaged by Defendants and are entitled to damages and equitable relief.

## COUNT I
## FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)

129.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

130.    The First Amendment to the United States Constitution prohibits the abridgment of the freedom of speech.

131.    Political, religious, commercial, and artistic speech are the highest and most important forms of speech protected by the First Amendment to the United States Constitution.

132.   The right of an American citizen to criticize public officials and policies is the central meaning of the First Amendment to the United States Constitution.

133.   The protections of the First Amendment have been extended through the Fourteenth Amendment to prohibit the abridgment of the freedom of speech, freedom of expression and of the free exercise of religion by state and local governments.

134.   Persons violating the First and Fourteenth Amendments under color of state law are liable under 42 U.S.C. § 1983.

135.   The repeated denials and onerous burdens placed on Soil Friends, by Defendants and others, in seeking their approval for special exception use, was and continues to be retaliation against Plaintiffs' engagement in protected speech, which violates the First Amendment.

136.   Plaintiffs' Facebook posts criticizing Comstock Township and their officials is constitutionally protected speech.

137.   Plaintiff's statement that Comstock Township was anti-business was a comment on a matter of public concern–namely the effectiveness of governmental entity Comstock Township.

138.   Plaintiff's statement toward Jodi Stefforia that the community "should ask what happened with [Jodi Stefforia's] position in previous townships" and that

"she pack her boxes and go" was a comment on a matter of public concern–namely the effectiveness of a governmental official acting under color of state law.

139.   Plaintiff's statements toward both Randy Thompson and Scott Hess that they have "blocked [Soil Friends] from buying permits for improvements and also allowed harassment to other business leaders" and that "[Soil Friends] hope your not considering reelection" was a comment on a matter of public concern – namely the effectiveness of a governmental official acting under color of state law.

140.   Plaintiff's statement toward KABA that "[Comstock Township] should make due without it" was a comment on a matter of public concern – namely the effectiveness of a governmental unit.

141.   Defendants in concert and with others acting under color of state law took adverse action against Plaintiffs by imposing onerous burdens on their business plans and approvals, filing frivolous complaints with State agencies, and delaying to the extent possible any opportunity for Soil Friends to conduct its business.

142.   This adverse action was taken by Defendants in concert with others to punish Plaintiffs for their Facebook posts criticizing Comstock Township, KABA, and their officials acting under color of state law to deter Plaintiffs from further public comment.

143.   Defendants in concert and with others including Defendant Jodi Stefforia have taken adverse action against Plaintiffs for their comments directed

towards her including altering the conditions for approval, recommending that Plaintiffs agenda continue to be tabled despite all necessary information being provided, and ensuring that Plaintiffs be held up at every possible stage to ensure denial of their building permits.

144.    Defendants in concert and with others including Defendant Scott Hess have taken adverse action against Plaintiffs for their comments directed towards him including falsely reporting to MLCC that Plaintiffs were not approved for manufacturing cider in the red barn after the special use exception was issued.

145.    Defendants in concert and with others including Defendant KABA, on behalf of Defendant Mike Alwine, have taken adverse action against Plaintiffs for their comments directed towards them including denying Plaintiff's building permits wherein the previous site plan contemplates the usage sought.

146.    Upon information, knowledge, and belief, the adverse actions of Defendant KABA are being directed by Defendants Comstock Township and/or their officials acting under color of state law.

147.    The adverse actions taken by Defendants in concert and with others acting under color of state law are attributed to Plaintiffs continued use of protected speech.

148.    These actions would deter an ordinary person from continuing to exercise his or her free speech rights regarding a governmental unit or their officials.

149.   Defendants cannot point to any interest that could outweigh Plaintiffs' interest in exercising their free speech rights.

150.   Accordingly, Defendants in concert and with others acting under color of state law, have retaliated and continue to retaliate against Plaintiffs for their exercise of protected speech in violation of the U.S. Constitution's First Amendment.

151.   Plaintiffs are entitled to both nominal and compensatory damages as a result of Defendants' violation of Plaintiffs' constitutional rights and the retaliation as to those rights as well as injunctive relief.

## COUNT II
## UNCONSTITUTIONAL CONDITIONS

152.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

153.   The unconstitutional conditions doctrine prohibits the government from conditioning the receipt of a government benefit on the relinquishment of a constitutional right.

154.   The government violates the unconstitutional conditions doctrine when it pressures a person to give up constitutional rights in order to obtain a public benefit.

155.   The government also violates this doctrine when it denies a person a benefit because that person exercised his or her constitutional rights.

156.   Defendants  including  Comstock  Township  have  violated  the unconstitutional  conditions  doctrine  by  pressuring  Plaintiffs  to  give  up  their constitutional  rights  to  free  speech  to  criticize  a  municipality's  government  and officials by conditioning their receipt of special use exception, site plan approval, and  building  permits  for  the  red  barn  on  Plaintiffs  refraining  from  further  public comment against Comstock Township, KABA and/or their officials.

157.   Furthermore,  Defendants  including  Comstock  Township,  KABA, and/or  their  officials  have  violated  the  unconstitutional  conditions  doctrine  by delaying Plaintiffs' the benefits of special exception use, site plan approval, and the issuance of their building permits because Plaintiffs have exercised their right to free speech.

158.   In  October  2022,  Plaintiffs  began  publicly  stating  their  political viewpoint about actions taken by Comstock Township and its officials calling into question their integrity and clear anti-business stances on Facebook.

159.   When Comstock Township Official Defendant Randy Thompson met with Plaintiffs on October 31, 2022, he insinuated that Plaintiffs Facebook posts criticizing Comstock Township must cease because it placed Comstock Township in a  negative  light  and  would  cause  further  issues  with  Plaintiffs  seeking  special exception use from Comstock Township for Plaintiffs' operations.

160.   Despite Defendant Randy Thompson's request, Plaintiffs continued to post on Facebook statements that criticized Comstock Township, KABA, Jodi Stefforia, Randy Thompson, and Scott Hess in their official capacities.

161.   At the April 27, 2023, Planning Commission meeting, Defendant Patrick Hanna, a member of the Planning Commission stated that Plaintiffs' approval for their special exception use and site plan review should be denied due to Plaintiff Ben Martin's character.

162.   Defendants have taken the position that as long as Plaintiffs continue to exercise their right to criticize the governmental entities and their officials, they will not obtain the public benefit of having a building permit issued.

163.   Plaintiffs' statements regarding the effectiveness of governmental entities and their officials are completely unrelated to whether a building permit should be issued for their property.

164.   These actions therefore violate the unconstitutional conditions doctrine, and Plaintiffs are entitled to both nominal and compensatory damages as a result of Defendants' actions as well as injunctive relief.

## COUNT III
## VIOLATION OF DUE PROCESS (42 U.S.C. § 1983)

165.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

166. The Due Process Clause of the Fourteenth Amendment, through the Fifth Amendment, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

167. The Due Process Clause of the Fifth Amendment, and as applied to states through the Fourteenth Amendment, governs both procedural and substantive due process claims.

168. Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

169. Procedural due process claims are not concerned with the deprivation of a constitutionally protected interest in 'life, liberty, or property', but deprivation of those interests without due process of law. *Id.*

170. The substantive due process component of the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

171. Substantive due process claims fall into two categories: (i) "claims that an individual has been deprived of a particular constitutional guarantee," and (ii) "claims that the government has acted in a way that shock[s] the conscience." *Handy-Clay v. City of Memphis, Tenn*., 695 F.3d 531, 547 (6th Cir. 2012)

34

172.   Defendants and others' actions confirm a repeated pattern to avoid procedural due process by depriving Plaintiffs of their rights to operate their farm, cidery and associated business ventures.

173.   Defendants have repeatedly tabled, postponed, or otherwise delayed Plaintiffs special exception approvals and site plan approvals at Planning Commission meetings despite Plaintiffs timely filing the appropriate paperwork.

174.   Defendants have taken further adverse action against Plaintiffs by striking them from Planning Commission meetings without any valid reason when Comstock Township was court ordered to proceed in good faith.

175.   Additionally, Defendants violated Plaintiffs' due process rights by Attorney Seeber illegally attending an informal hearing on behalf of Comstock Township, and drafting an order that was tantamount to an injunction in favor of Comstock Township all while Plaintiffs were prohibited from having attorney representation.

176.   Defendants then utilized this ill-gotten and wrongful order to further violate Plaintiffs' due process rights.

177.   Defendants violated Plaintiffs due process rights by continuously altering and changing the requirements for approval of Plaintiff's building permits during the process.

178.   Defendants required paving the entirety of a farm driveway and installing a $200,000.00 sprinkler system wherein the fire code does not require such action, inter alia.

179.   Defendants' most recent position that Plaintiff's prior A2-F2 architectural drawings need to be amended or restarted because they were for a "wedding/event space" and Plaintiff is now seeking permission for a "winery tasting" room ignores that the critical fact that the same structural and occupancy stringency applies.

180.   Defendants' conduct shows a complete disregard for the fairness required in such actions.

181.   Defendants' behavior and actions are designed to prevent Plaintiffs from ever meeting the township ordinances and deprive Plaintiffs of their right to due process and equal protection under the law.

182.   Upon information, knowledge, and belief, Defendants have discussed and made determinations outside their required public forum that is further supported by representations to Plaintiffs by their engineer that Defendants will never approve Plaintiff for a building permit.

183.   Moreover, Defendants, including Patrick Hanna, have made it known they do not approve of Plaintiff Ben Martin or his character and will never approve any future special use exceptions or permits for Plaintiffs.

184.   Defendants pre-determined denial of Plaintiffs' current and future abilities to utilize their property lawfully would shock the conscience of any ordinary person or community.

185.   Accordingly, Defendants actions have denied and violated Plaintiffs constitutional rights to both procedural and substantive due process, and Plaintiffs are entitled to damages and equitable relief.

**COUNT IV**
**REGULATORY TAKINGS**
**(Fifth and Fourteenth Amendment)**

186.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

187.   The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

188.   The Fifth Amendment prohibits both "physical takings" and "regulatory takings". *Cedar Point Nursery v. Hassid*, 141 S. Ct. 20163, 2071-2072 (2021).

189.   A regulatory taking occurs when government regulation goes "too far" in restricting an owner's use of the property. *Id*.

190.   The regulatory takings doctrine exists primarily in the context of land-use restrictions such as zoning ordinances. *Id*. at 2072.

191.   A regulatory taking can either be "categorical" or "non-categorical". *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc*., 365 F.3d 435, 482-83 (6th Cir. 2004).

192.   A taking is "non-categorical" if the challenged regulation does not deprive the property of all economic value, but nonetheless goes "too far". *Id*.

193.   Defendants' actions, interpretation and application of Comstock Township's zoning regulations as to Plaintiff's property are a non-categorical regulatory taking because the regulations imposed upon Plaintiffs for their special exception use, site plan approvals, and building permits overly restricts Plaintiffs land use.

194.   Defendants' actions, interpretation and application of Comstock Township's zoning regulations as to Plaintiff's property are a non-categorical regulatory taking because Defendants are ignoring state law preemption and failing to allow Plaintiffs the freedom to conduct a lawful business enterprise.

195.   Plaintiffs have the right to commercialize their business interests in their property and to offer all services permitted under their MLCC license.

196.   Plaintiffs have a right to be free from Defendants interference, retaliation, and onerous application of Comstock Township's zoning regulations.

197.   Defendants' unlawful interference and unreasonable restrictions/conditions on Plaintiffs' property are designed to ensure that Plaintiffs cannot offer any cidery/farm-adjacent activities or events.

198.   Defendants have weaponized the Comstock Township's zoning regulations and approval process to prevent Plaintiffs from conducting business on their cidery/farm.

199.   Defendants' weaponized use of zoning ordinances requires, inter alia, Plaintiffs to spend thousands of dollars to pave their driveway and to install automatic sprinkler systems, without any necessity in the fire code, deprives Plaintiffs of their ability to use their property and buildings.

200.   Plaintiffs will suffer irreparable harm if Defendants are allowed to continue enforcing its policies and zoning regulations against Plaintiffs.

201.   These actions by Defendants violate the protections granted by the Constitution and Plaintiffs are entitled to damages as well as injunctive relief.

## COUNT V
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (42 U.S.C. § 1985)

202.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

203.   "If two or more persons in any State…for the purpose of depriving either directly or indirectly, any person…of equal privileges and immunities under the laws…the party so injured or deprived may have an action for the recovery of

damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3).

204.   "Every person who, having knowledge that any of the wrongs conspired to be done…are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured…for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented." 42 U.S.C. §1986.

205.   Upon information, knowledge, and belief, Defendants in concert and with others have held discussions outside the required public record to determine Defendant Comstock Township's position as to Plaintiff's special use exception, site plan approvals, and building permits.

206.   Defendants' discussions and determinations outside the public record were designed and held to ensure that Plaintiffs would be denied and never be awarded any special use exception, site plan approvals, or building permits.

207.   Defendants in concert and with others have collectively determined that Plaintiffs, and specifically Plaintiff Ben Martin, lacks the appropriate character to be approved for special exception use, site plan approval, and building permits in violation of the law.

208.   Defendants' striking of Plaintiffs' special use exception and site plan approval from a meeting agenda, violated Plaintiffs' procedural and substantive due process of law rights.

209.   Defendants have made it known that Plaintiffs will be continually denied any current or future special use exceptions, site plan reviews, or building permits because of Plaintiffs' character and their Facebook posts against them.

210.   Defendants have conspired to purposely interfere with Plaintiffs' civil rights including his exercise of free speech and due process of law in violation of the constitution.

211.   Defendants knew or were aware of the wrongs, including striking Plaintiffs from the Planning Commission agenda, denying and/or delaying Plaintiff's special use exception and site plan approval, and instructing Defendant KABA to deny Plaintiffs a building permit for the red barn.

212.   Defendants Comstock Township and Scott Hess' false complaint to the MLCC indicating that Plaintiffs did not have special exception use approval and were operating an illegal winery/cidery, after this had been granted, is prima facie evidence of such a conspiracy.

213.   Defendants in concert and with others conspired to deprive Plaintiffs of their constitutionally protected rights by illegally having Attorney Seeber attend an informal hearing and drafting a wrongful order tantamount to an injunction.

214.   As attorneys, Defendants Catherine Kaufman and Roxanne Seeber 's failure to thwart or prevent such deprivations by other Defendants including, relying on an ill-gotten order and allowing other members to conspire to prevent Plaintiffs' from exercising their constitutional rights to due process are particularly egregious.

215.   Accordingly, Defendants are liable to Plaintiff for their conspiracy to deny Plaintiffs their constitutional rights including the right to due process and equal protection of the law, and their failure to intervene.

216.   As such Plaintiffs are entitled to damages and equitable relief.

**COUNT VI**
**STATE LAW PREEMPTION BY MICHIGAN LIQUOR CONTROL CODE**

217.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

218.   Comstock Township's zoning ordinance is preempted by the Michigan Liquor Control Code.

219.   MLCC has the exclusive authority to regulate the sale of alcohol in the state of Michigan and, pursuant to MCL 436.110 et seq., has devised a comprehensive set of statutes which regulate the sale of alcohol in this State.

220.   When MLCC issues a license, it comes with certain privileges which Comstock Township may not restrict.

221.   To operate a winery in Michigan, a license from MLCC is required.

222.   Soil Friends has both a Small Wine Maker license and an On-Premises Tasting Room issued by MLCC.

223.   A tasting room permit allows Soil Friends to "provide samples of or sell at retail for consumption on or off the premises…wine it manufactured…[or] bottled." MCL 436.1113(1)(b).

224.   Soil Friends' tasting room permit also allows the performance or playing of any type of musical instrument and singing without the need for an additional permit. MCL 436.1916(11).

225.   Once a tasting room permit is issued by MLCC, the winery may also receive from MLCC "a Sunday sales permit, catering permit, dance permit, entertainment permit, specific purpose permit, extended hours permit, [and] authorization for outdoor service." MCL 436.1536(11).

226.   None of these additional MLCC permits related to a tasting room require the Township's approval.

227.   According to the Michigan Liquor Control Code, "[a] license issued under this act is a contract between the commission and the licensee." MCL 436.1501.

228.   Defendants, including Comstock Township, does not have authority to restrict any permissions granted to Soil Friends by virtue of their licenses granted by the MLCC.

43

229.   "Any permit issued to a licensee by the commission or any privilege granted to a licensee by the commission may be revoked or suspended by the commission or a hearing commissioner, after due notice and proper hearing, if the licensee or the establishment no longer qualifies for the permit or the privilege or if the licensee is found to be in violation of the act or a commission rule which directly pertains to the permit issued or the privilege granted." MLCC Rule 436.1061.

230.   Defendants' restrictions and actions to keep Plaintiffs from exercising their rights under the MLCC licenses are preempted by state law.

231.   A local unit of government may not add conditions to a state statute if because the additional regulation to that of a state law constitutes a conflict." *Nat'l Amusement Co. v. Johnson*, 270 Mich. 613, 616 (2015).

232.   Where a state statute allows certain conduct and a local ordinance forbids it, "the ordinance is void." *Id*.

233.   A local municipality may not enjoin activity allowed by state law "simply by characterizing the conduct as a zoning violation." *Beek v. City of Wyo*., 495 Mich. 1, 21 (2014).

234.   Defendants have no authority to enforce an ordinance which restricts, or prohibits, live music, retail sales, food, alcohol or beverage service on the property, in light of the MLCC's authority.

235.   Currently, Comstock Township has imposed conditions on Plaintiff's special use exception including that there be "no amplification of music outside the barn", "no use of speakers outside the barn", and that "hours are limited to 9 a.m. to 9 p.m. Monday through Sunday."

236.   Each of these activities is explicitly allowed under the Michigan Liquor Control Code.

237.   Thus, the restrictions imposed by Comstock Township on Plaintiffs' special exception use are preempted by state law.

238.   As such Plaintiffs are entitled to declaratory and injunctive relief that Defendants' conditions and requirements are preempted by state law.

## COUNT VII
## STATE LAW PREEMPTION BY MICHIGAN RIGHT TO FARM ACT

239.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

240.   Michigan's Right to Farm Act ("RTFA") was enacted to protect farmers from nuisance lawsuits. *Travis v Preston (On Rehearing),* 249 Mich. App. 338, 342 (2002).

241.   The Legislature "enacted the Right to Farm Act to protect farmers from the threat of extinction caused by nuisance suits arising out of alleged violations of local zoning ordinances and other local land uses regulations as well as from the

threat of private nuisance suits." *Northville Twp. v. Coyne*, 170 Mich. App. 446, 448-449 (1988).

242. "Local government may not enact or enforce an ordinance that conflicts with the Right to Farm Act or the GAAMPs." *Brown v. Summerfield Twp.*, 2012 WL 3640330 (Mich. App. Aug 23, 2012); MCL 286.474(6).

243. "[A] farm or farm operation must not be found to be a public or private nuisance if it conforms to 'generally accepted agricultural and management practices' ('GAAMPS'), according to policy determined by the state commission on agriculture. Local government may not enact or enforce an ordinance that conflicts with the Right to Farm Act or the GAAMPs." *Id*. (quoting MCL 286.474(6)).

244. "Therefore, 'any township ordinance, including a zoning ordinance, is unenforceable to the extent that it would prohibit conduct protected by the RTFA.'" *Shelby Twp. v. Papesch*, 267 Mich App 92, 107 (2005).

245. Under the 2023 Farm Market GAAMPS, a "farm market" is defined as:

> "[A] year-round or seasonal location where transactions and marketing activities between farm market operators and customers take place. A farm market may be a physical structure such as a building or a tent, or simply an area where a transaction between a customer and a farmer is made…Fresh products as well as processed products may be sold at the farm market. At least 50 percent of the products offered must be produced on and by the affiliated farm measured by retail floor space during peak production season, or 50 percent of the average gross sales for up to the previous five years or as outlined in a business plan."

Exhibit 23.

246.   The 2023 GAAMPs further define a "farm product" as:

> "[T]hose plants and animals useful to humans produced by
> agriculture and includes…berries, herbs, fruits, vegetables,
> flowers, seeds, grasses, nursery stock, trees and tree products."
> *Id.*

247.   Additionally, the 2023 GAAMPs define "marketing" as:

> "Promotional and educational activities at the farm market
> incidental to farm products with the intention of selling more
> farm products. These activities include, but are not limited to
> farm tours (walking or motorized), demonstrations, cooking and
> other classes utilizing farm products, and farm-to-table dinners."
> *Id*.

248.   Plaintiffs' farm and farm market has been determined to be GAAMP

compliant by the Michigan Department of Agriculture and Rural Development

("MDARD") with Plaintiffs having had fifty (50) percent of its square footage for

their farmers market comprised of agricultural products grown on their farm during

peak production (i.e., summer).

249.   During their peak production season, the farm products sold by

Plaintiffs in their farm market from their farm include but are not limited to

jalapenos, lavender, butternut squash, pumpkins and an assortment of berries.

250.   Defendants are prohibiting Plaintiffs from selling cut Christmas trees

during the Christmas season and conducting seasonal marketing for their farm by

having a Santa Claus on the premises.

251.   The prohibition on Plaintiffs selling of cut Christmas trees is preempted by the RTFA that contemplates trees as being a farm product capable of being sold at a farm market.

252.   The prohibition on Plaintiffs having a Santa Claus to market sales of their cut Christmas trees is preempted by the RTFA as this promotion is incidental to the farm products and intended to assist Plaintiffs sell more trees.

253.   Thus, the ordinance against Plaintiffs' right to sell cut Christmas trees and have a Santa Claus on the premises is preempted by the RTFA.

254.   As such, Plaintiffs are entitled to declaratory and injunctive relief that Defendant's conditions and requirements of their ordinances are preempted by state law.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR EXPECTANCY UNDER STATE LAW

255.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

256.   Plaintiffs are engaged in the business of both operating a farm and winery/cidery operation.

257.   On October 17, 2017, Comstock Township granted Plaintiffs approval for a winery license issued by the MLCC determining that it was an accessory to the

existing use of the property and/or similar bond fide agricultural enterprise or use of land and structures.

258.   Plaintiffs spent and committed considerable time, effort, and financial resources to building a successful hard cider business.

259.   Through Plaintiffs' efforts and their winery/cidery license, Soil Friends hard cider was sold not only on the farm but was distributed across the state of Michigan.

260.   Plaintiffs' hard cider was distributed through their business relationship with I.H.S. Distributing Company that provided Plaintiffs' products to bars, restaurants, and stores in the area and across the State of Michigan.

261.   Moreover, Plaintiffs had secured a lucrative business relationship with retail grocer Meijer's wherein Plaintiffs hard cider would be sold in twenty (20) stores across the State of Michigan.

262.   Plaintiffs' distribution requires providing their distributors and sellers with a set number of stock-keeping units ("SKUs") with future re-orders premised upon sales of their products and SKUs.

263.   A failure by Plaintiffs to maintain their production and SKUs with their distributors and sellers will result in decreased demand for their product.

264.   At all relevant times, Defendants were aware that Plaintiffs were producing hard cider and were distributing their product to restaurants, bars, and stores in the area and across the State of Michigan.

265.   Defendants' actions in closing Plaintiffs' hard cider business in November 2022 through February 2023, without any authority under the law to do so, has caused and will continue to cause a disruption in the contracts/business relationships/expectancies of Plaintiffs.

266.   Due to Defendants' unlawful closure of Plaintiffs' hard cider business, Plaintiffs lost in excess of $60,000.00 of product in spoilation alone.

267.   Furthermore, Defendant Scott Hess' false complaint to MLCC after Plaintiffs were granted special exception use by Comstock Township, allowing them to continue manufacturing their hard cider, was designed to prevent Plaintiffs from engaging in their lawful business practices.

268.   Defendants' wrongful actions in closing Plaintiffs' hard cider business has caused irreparable harm to their business reputation, their future business expectancies, and the overall financial viability of their business.

269.   Plaintiffs have been and will continue to be damaged by the unlawful actions of Comstock Township and their officials acting under color of state law.

270.   Plaintiffs are entitled to recover damages for Defendants knowingly, intentional, and improper interference with Plaintiffs' contracts/business relationships/expectancies.

271.   Plaintiffs' damages are a direct and proximate cause of Defendants' tortious interference with the contracts/business relationships/expectancies of Plaintiffs and are therefore liable to Plaintiffs jointly and severally.

272.   As such Plaintiffs are entitled to damages to be determined by a jury, and any other relief this Court deems reasonable and just.

## COUNT IX
## DEFAMATION UNDER STATE LAW

273.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

274.   On December 2, 2022, Defendant Matthew Miller, on behalf of Defendant Comstock Township, published and posted a Statement to Comstock Township's website titled "FOR IMMEDIATE RELEASE: Comstock Charter Township's statement on Soil Friends Hard Cider Company."

275.   The Statement includes numerous false and defamatory statements, claiming: (1) Soil Friends did not give notice or have permission for a MLCC license for its current use; (2) that Soil Friends was required to give notice and to obtain permission from Comstock Township for permits under their MLCC license; (3) that the addition of a tasting room and on-site sales requires a special use permit from

Comstock Township; (4) that Soil Friends did not have approval for food and beverage service; (5) that Soil Friends did not have approval for outdoor service of food and/or alcohol; (6) that Soil Friends could not manufacture hard cider/beer; (7) that Soil Friends could not conduct distribution of hard cider/beer; (8) that Soil Friends farm market was in violation of the farm market GAAMP requiring that 50% of the product be grown on their farm; (9) that Soil Friends hard cider forms part of their farm market; (10) that Soil Friends was required to produce cider only from produce on its farm.

276.   At the time of the allegations, Plaintiffs had been approved by both Defendant Comstock Township and the MLCC for a small winemaker's license.

277.   Defendant Comstock Township knew or should have known that the MLCC license granted Plaintiffs the right to have an on-premises tasting room, outdoor tasting room, the ability to sell their product, the ability to serve food, the ability to manufacture hard cider, the ability to distribute hard cider, and that Plaintiffs did not need to personally source all ingredients for their hard cider – only the namesake ingredients.

278.   Moreover, Defendant Comstock Township's claims that Soil Friends farm market had violated GAAMPs and did not qualify as such in the State of Michigan was based purely on speculation without any verification from MDARD.

279.   The allegations against Plaintiffs in the Statement not only were false when published but showed a complete disregard by both Defendant Matthew Miller and Defendant Comstock Township for verifying the accurateness of these claims.

280.   Defendant Matthew Miller had a duty to conduct his own investigation as to the veracity of the claims asserted, including researching whether the statements were true before publishing.

281.   Defendant Matthew Miller failed to conduct any independent research or investigation and wrongfully relied upon information supplied by Defendant Comstock Township

282.   The Statement falsely accused Plaintiffs of unethical and unlawful behavior in an attempt by Defendant Comstock Township to place itself in a positive light within the community for its actions while causing significant damage to Plaintiffs' business reputation.

283.   The Statement was utilized and cited by other local and state media, including News Channel 3, NBC News Channel 8, MLive, and MSN News, to perpetuate the false claims against Plaintiffs.

284.   Defendants Comstock Township and Matthew Miller negligently or with actual malice published false and defamatory statements regarding Plaintiffs.

285.   The defamatory statements have a tendency to, and did, prejudice Plaintiffs in the conducting of their business and deter others from associating or dealing with Plaintiffs and their products.

286.   The Statement was not privileged when made.

287.   Despite Defendants having material knowledge since the Statement was published that many of the claims were untrue when made, no retraction has been made or issued and the Statement continues to exist on its website.

288.   As a direct and proximate result of Defendants Comstock Township and Matthew Miller's wrongful conduct, Plaintiffs have suffered substantial economic injury, loss of goodwill, harm to its business reputation, loss of esteem and standing in the community, and loss of business opportunities and Comstock Township and Matthew Miller are therefore liable jointly and severally.

289.   As such, Plaintiffs are entitled to actual damages.

## COUNT X
## VIOLATION OF MICHIGAN'S OPEN MEETINGS ACT (MCL 15.261 ET SEQ.)

290.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

291.   Michigan's Open Meetings Act, MCL 15.261 et seq., imposes specific requirements for meetings of local public bodies to be open to the public.

54

292.   The Open Meetings Act obligates, "public bodies [to] conduct their meetings, make all their decisions, and conduct their deliberations (when a quorum is present) at meetings open to the public." *Speicher v. Columbia Twp. Bd. Of Trustees*, 497 Mich. 125, 134-135 (2014).

293.   "All decisions of a public body must be made at a meeting open to the public." MCL 15.263(2).

294.   "If a public body is not complying with this act…a person may commence a civil action to compel compliance or to enjoin further noncompliance with this act." MCL 15.271(1).

295.   "If a public body is not complying with this act, and a person commences a civil action against the public body for injunctive to compel compliance or to enjoin further noncompliance, the person shall recover court costs and actual attorney fees for the action." MCL 15.271(4).

296.   "A public official who intentionally violates this act shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing this action." MCL 15.273(1)

297.   Defendants has violated the terms of the Open Meetings Act through its clear actions to pre-determine its decisions affecting Plaintiffs that require these issues to be addressed in a forum open to the public.

298.   Upon information, knowledge, and belief, Defendants, including Defendants Jodi Stefforia, Randy Thompson, and Scott Hess, have conferred and instructed other Defendants serving as members of Comstock Township's Planning Commission, Township Board, and KABA to deny Plaintiffs their special exception use approval, site plan approval, and building permit approvals outside the required public forum.

299.   Upon information, knowledge, and belief, these conversations included a quorum of Defendant-members of the Comstock Township Planning Commission and/or Township Board requiring such conversations to be open to the public.

300.   Upon information, knowledge, and belief, Defendants' actions including Defendant Jodi Stefforia advising the Planning Commission to table Plaintiff's special exception use approval and Defendant members of Comstock Township Planning Commission striking of Plaintiffs' special exception use approval from a public meeting were all efforts designed to continue deliberations and make decisions outside the public process.

301.   The actions and noncompliance of Defendants and its officials acting under color of state law, including Jodi Stefforia, Randy Thompson, and Scott Hess, with the Open Meetings Act have damaged Plaintiffs by denying them a meaningful opportunity to participate in the public process and have resulted in damage to their business and personal reputations.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER STATE LAW

302.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully restated herein.

303.   Defendants' conduct, as outlined above was intentional.

304.   Defendants' conduct, as outlined above, was/is extreme, outrageous, and of a character not to be tolerated by a civilized society.

305.   Defendants' conduct is/was motivated by Plaintiffs' exercise of their constitutional rights utilizing the zoning regulations, ordinances, and their false public statements to intentionally damage the business reputation of Plaintiffs and to publicly shame Plaintiffs for their false violations of Comstock Township's ordinances despite Plaintiffs being legally authorized and permitted to do so by state law.

306.   Defendants' actions, including their public statements, have caused significant emotional distress to Plaintiffs' lowering their esteem and reputation among the community, other businesses, and across the state of Michigan.

307.   Due to Defendants' defamatory and slanderous publications, cited by other media and available via the internet, the damage to Plaintiffs' personal and business reputation is far greater than a simple slight.

308.   Many customers and vendors continue to question whether Plaintiffs operations are lawful, imposing significant stress and threatening the financial viability of Plaintiffs' business.

309.   Defendants' actions have forced Plaintiff to take additional steps to inform their customers, distributors, and vendors, that their products are lawful and that their operations are in conformance with all applicable laws.

310.   All of Defendants' wrongful actions have caused Plaintiffs damage to their mental health and their overall financial well-being.

311.   Moreover, Plaintiffs no longer have any certainty that their goals of operating a successful farm and winery/cidery can continue.

312.   As such, Plaintiffs are entitled to damages for Defendants' actions to be determined by a jury.

## COUNT XII
## CIVIL CONSPIRACY

313.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully stated herein.

314.   Defendants illegally, maliciously, and wrongfully conspired between and among one another and with others with the intent to and for the illegal purpose of interfering with Plaintiff's business, business relationships, business expectancies, and to lower their reputation in the community.

315.   Defendants, in combination, conspired to utilize their positions as governmental units or within government to ensure that Plaintiffs' business would be unable to operate preventing Plaintiffs from continuing their lawful enterprise permitted by state law. As a result of the conspiracy and Defendants' illegal, wrongful, or tortious acts, Plaintiffs sustained damages including loss of revenue from their business, loss of product, loss of business relationships and/or expectancies, and a loss of personal and business reputation within the community and across the state of Michigan.

316.   Plaintiffs have been damaged by Defendants actions in an amount to be determined at trial and are therefore jointly and severally liable to Plaintiffs for all of their injuries and damages.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Honorable Court enter judgment against Defendants and in their favor, and provide Plaintiffs with the following relief:

(A)    That this Court award nominal damages and compensatory damages, for the violation of Plaintiff's constitutional and statutory rights;

(B)    That this Court award Plaintiffs' compensatory damages in an amount to be determined by a jury sufficient to compensate Plaintiffs for their actual, consequential, and incidental losses, including lost profits, as a result of Defendant's

wrongful actions arising under state law, as well as the interest, costs, and actual and/or reasonable attorneys' fees as the law provides;

    (C)    That this Court enjoin Defendants from any further action that will deprive Plaintiffs of their constitutional rights, and those provided under state law.

Respectfully Submitted,

*Steven J. Kustra*

By: Steven J. Kustra (P79002)

KUSTRA & BLOOM PLC
Steven J. Kustra (P79002)
Jeffrey M. Bloom (72343)
Attorneys for Plaintiffs
21002 Mack Avenue
Grosse Pointe Woods, MI 48236
(313) 586-4444
skustra@kustrabloom.com
Dated 12-01-2023    jbloom@kustrabloom.com