### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SOIL FRIENDS LLC, a Michigan
limited liability company;
BENJAMIN MARTIN, an individual;       Case No. 1:23-cv-1267

        Plaintiffs,                Honorable Jane M. Beckering
v.                                    Magistrate Judge Phillip J. Green

COMSTOCK CHARTER TOWNSHIP,
a Michigan municipal corporation;
KALAMAZOO AREA BUILDING AUTHORITY,
a Michigan municipal corporation or agent of
Comstock Township; JODI STEFFORIA; RANDY
THOMPSON; SCOTT HESS; MATTHEW MILLER;
JENNIFER JONES-NEWTON; RON SPORTEL;
ALLAN FAUST; JEFF AMPEY; LARRY NICHOLS;
PATRICK HANNA; CLYDE SHERWOOD III;
ROXANNE SEEBER; and CATHERINE KAUFMAN,

        Defendants.

_____

### DEFENDANTS', ROXANNE SEEBER AND CATHERINE KAUFMAN, MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(1) AND 12(B)(6)

**NOW COME** Defendants, Roxanne Seeber and Catherine Kaufman, by and through their attorneys, Maddin Hauser Roth & Heller, P.C., and respectfully move this Court to dismiss Plaintiffs' First Amended Complaint, in its entirety, as to these Defendants pursuant to Fed.R.Civ.P. 12(b)(6). In support of this motion, Defendants, Roxanne Seeber and Catherine Kaufman submit their Brief in Support, filed contemporaneously herewith.

Pursuant to Local Rule 7.1, counsel for Defendants, Roxanne Seeber and Catherine Kaufman sought Plaintiffs' concurrence in the relief sought which was not provided.

**WHEREFORE**, Defendants, Roxanne Seeber and Catherine Kaufman request that this Court enter an order dismissing the First Amended Complaint as to these Defendants and grant all other relief as would be just and proper.

Respectfully submitted,

 */s/ Kathleen H. Klaus*

Kathleen H. Klaus (P67207)
MADDIN, HAUSER, ROTH & HELLER, P.C.
*Attorneys for Defendants, Roxanne Seeber and Catherine Kaufman*
28400 Northwestern Hwy, 2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com

Dated: March 1, 2024

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SOIL FRIENDS LLC, a Michigan
limited liability company;
BENJAMIN MARTIN, an individual;          Case No. 1:23-cv-1267

               Plaintiffs,          Honorable Jane M. Beckering
v.                                               Magistrate Judge Phillip J. Green

COMSTOCK CHARTER TOWNSHIP,
a Michigan municipal corporation;
KALAMAZOO AREA BUILDING AUTHORITY,
a Michigan municipal corporation or agent of
Comstock Township; JODI STEFFORIA; RANDY
THOMPSON; SCOTT HESS; MATTHEW MILLER;
JENNIFER JONES-NEWTON; RON SPORTEL;
ALLAN FAUST; JEFF AMPEY; LARRY NICHOLS;
PATRICK HANNA; CLYDE SHERWOOD III;
ROXANNE SEEBER; and CATHERINE KAUFMAN,

               Defendants.

---

### BRIEF IN SUPPORT OF DEFENDANTS', ROXANNE SEEBER AND CATHERINE KAUFMAN, MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(B)(1) AND 12(B)(6)

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED .............................................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vii

I. INTRODUCTION .......................................................................................... 1

II. SUMMARY OF FACTS ALLEGED IN THE COMPLAINT ....................... 2

    A.  Plaintiffs obtain a small wine maker license ........................................ 2

    B.  Plaintiffs build a new barn on their property to expand their operations ........... 3

    C.  The Zoning Violation Citation ............................................................. 3

    D.  The October 27, 2022 Township Planning Commission Meeting ........... 4

    E.  The Hearing on the Zoning Violation ................................................... 5

    F.  Plaintiffs file a Motion for Reconsideration of the Compliance Order ......... 6

    G.  The December 5, 2022 Township Board Meeting ................................. 7

    H.  Plaintiffs file a Complaint for Superintending Control ......................... 7

    I.  Plaintiffs and the Township stipulate to an amended Compliance Order ........... 8

    J.  Plaintiffs ask the MLCC redefine their license to include the New Barn ......... 9

    K.  The Township Approves Plaintiffs' special use exception on April 27, 2023 ...... 10

    L.  Plaintiffs file a Motion for Show Cause .............................................. 10

    M.  Plaintiffs file this lawsuit ................................................................. 11

LAW AND ANALYSIS ....................................................................................... 12

    A.  Standard of Review .......................................................................... 12

    B.  Plaintiffs' claims against the Defendant Attorneys must be dismissed because they are entitled to immunity ................................................................. 13

    C.  Plaintiffs' claims against the Defendant Attorneys are barred by the Rooker-Feldman doctrine ............................................................................ 18

    D.  Plaintiffs' §1983 claim in Count I must be dismissed as to the Defendant Attorneys ...................................................................................... 22

    E.  Plaintiffs' §1983 claim in Count III must be dismissed as to the Defendant Attorneys ...................................................................................... 25

    F.  Plaintiffs' Section 1985 claim in Count V must be dismissed as to the Defendant Attorneys ...................................................................... 26

    G.  The court should decline to exercise of Plaintiffs' remaining state claims ......... 28

    H.  Plaintiffs' tortious interference with business relationship claim in Count VIII must be dismissed as to the Defendant Attorneys ................................ 29

**I.   The intentional infliction of emotional distress claim in Count XI must be dismissed as to the Defendant Attorneys** ................................................................ 31

**J.   The civil conspiracy claim in Count XII must be dismissed as to the Defendant Attorneys** ................................................................................................................ **33**

**CONCLUSION** ................................................................................................................ **35**

## STATEMENT OF ISSUES PRESENTED

I.     **WHETHER PLANTIFFS' FEDERAL CLAIMS AGAINST THE DEFENDANT ATTORNEYS ARE BARRED BY ABSOLUTE IMMUNITY WHEN AT ALL RELEVANT TIMES THE DEFENDANT ATTORNEYS WERE PRIVATE SECTOR ATTORNEYS ACTING IN THEIR CAPACITY AS ATTORNEYS FOR THE DEFENDANT TOWNSHIP IN CONNECTIN WITH PLAINTIFFS' ORDINANCE VIOLATIONS AND SUBSEQUENT REQUEST FOR SPECIAL USE EXCEPTION?**

        Defendants Seeber and Kaufman say "Yes".
        Plaintiffs say "No".

II.    **WHETHER PLAINTIFFS' FEDERAL CLAIMS AGAINST THE DEFENDANT ATTORNEYS ARE BARRED BY THE ROOKER-FELDMAN DOCTRINE WHEN PLAINTIFFS ALREADY RAISED AND LOST THESE CLAIMS IN STATE COURT AND BECAUSE THEY ARE NOT CHALLENGING THE CONSTITUTIONALITY OF THE STATE LAW BUT RATHER HOW THE COURT APPLIED THE LAW?**

        Defendants Seeber and Kaufman say "Yes".
        Plaintiffs say "No".

III.   **WHETHER PLAINTIFFS' §1983 CLAIMS MUST BE DISMISSED WHEN THE DEFENDANT ATTORNEYS WERE NOT ACTING UNDER COLOR OF STATE LAW AND COULD NOT CONSPIRE WITH THEIR CO-DEFENDANT CLIENTS WHO ARE STATE ACTORS?**

        Defendants Seeber and Kaufman say "Yes".
        Plaintiffs say "No".

IV.  **WHETHER PLAINTIFFS' §1985(3) CLAIM MUST BE DISMISSED WHEN THE DEFENDANT ATTORNEYS' CONDUCT WAS ALL WITHIN THE SCOPE OF REPRESENTING THEIR CO-DEFENDANT CLIENTS AND, THEREFORE, IS IMMUNE FROM A CONSPIRACY CLAIM AND BECAUSE PLAINTIFFS DO NOT ALLEGE THAT THEY ARE MEMBERS OF A PROTECTED CLASS?**

Defendants Seeber and Kaufman say "Yes".
Plaintiffs say "No".

V.  **WHETHER THE REMAINING STATE LAW CLAIMS AGAINST THE DEFENDANT ATTORNEYS SHOULD BE DISMISSED WHEN ALL OF THE FEDERAL CLAIMS ARE SUBJECT TO DISMISSAL AND, THEREFORE, THE STATE LAW CLAIMS ARE NO LONGER PENDENT?**

Defendants Seeber and Kaufman say "Yes".
Plaintiffs say "No".

VI.  **WHETHER PLAINTIFFS' TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP CLAIM SHOULD BE DISMISSED AS TO THE DEFENDANT ATTORNEYS WHEN PLAINTIFFS HAVE NOT IDENTIFIED ANY AFFIRMATIVE ACTS TAKEN BY THE DEFENDANT ATTORNEYS THAT CORROBORATE ANY IMPROPER MOTIVE OR MALICE BUT, RATHER, ONLY ACTS TAKEN IN THE COURSE OF REPRESENTING THEIR CO-DEFENDANT CLIENTS AND BECAUSE PLAINTIFFS DO NOT ALLEGE THAT THERE WAS ANY BREACH OR TERMINATION OF THEIR BUSINESS RELATIONSHIPS?**

Defendants Seeber and Kaufman say "Yes".
Plaintiffs say "No".

**VII.  WHETHER PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED WHEN NONE OF THE CONDUCT ABOUT WHICH PLAINTIFFS COMPLAIN IS EXTREME, OUTRAGEOUS OR NOT TO BE TOLERATED BY A CIVILIZED SOCIETY AND WHEN PLAINTIFFS DO NOT ALLEGE THAT THEY HAVE SUFFERED SEVERE EMOTIONAL DISTRESS?**

Defendants Seeber and Kaufman say "Yes".
Plaintiffs say "No".

**VIII.  WHETHER PLAINTIFFS' CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED WHEN THE DEFENDANT ATTORNEYS ALLEGED CO-CONSPIRATORS WERE CLIENTS AND, THEREFORE, THE DEFENDANT ATTORNEYS COULD NOT CONSPIRE WITH THEIR CO-DEFENDANTS AND BECAUSE PLAINTIFFS CANNOT PROVE A SEPARATE ACTIONABLE TORT?**

Defendants Seeber and Kaufman say "Yes".
Plaintiffs say "No".

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

### Cases

*Adams v Tausend*, 2017 WL 9470710 (E.D. Mich. 2017)........................................................ 16

*Aschinger v Columbus Showcase Co.*, 934 F.2d 1402, 1413 (6th Cir. 1991)............................... 33

*Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) ...................... 12

*Bechtold v City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997)............................................ 21

*Bechtold*, at 1065 .......................................................................................................................... 23

*Bianchi* v. *Rylairsdam*, 334 F.3d 895, 900 (9th Cir. 2003) ........................................................... 21

*Blackwell v Allen*, No. 22-1300, 2022 WL 17832191, at *6 (6th Cir. Dec. 21, 2022) ................. 26

   *BPS Clinical Laboratories v Blue Cross Blue Shield of Michigan*, 217 Mich.App 687, 699, 552
   N.W.2d 919 (1996) ................................................................................................................ 35

*Briscoe v. LaHue*, 460 U.D. 325, 103 S.Ct 1108, 75 L.Ed2 96 (1983)) ...................................... 18

*Butz,* 438 U.S. at 512, 98 S.Ct. at 2913 ....................................................................................... 18

*Butz,* 438 U.S. at 512, 98 S.Ct. at 2913-14)................................................................................. 18

*Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir.1993).................................................... 12

*Dist. of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462 (1983)......................................... 19

*Doherty v Am. Motors Corp.*, 728 F.2d 334, 339-340 (6th Cir. 1984) .......................................... 27

*Estate of Smithers ex rel Norris v City of Flint*, 602 F3d 758, 765 (6th Cir. 2020) ..................... 32

*Farese v Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) ............................................................ 31

*Feldman v Green*, 138 Mich.App. 360, 369, 360 N.W.2d 881 (1984)........................................... 35

*Feldman*, 460 U.S. at 486 ............................................................................................................. 21

*Feldman*, 460 U.S.at 486 .............................................................................................................. 20

*Fenestra, Inc. v Gulf American Land Corp.*, 377 Mich. 565, 593, 141 NW.2d 36 (1966) .......... 39

*Filarsky v Delia*, 566 U.S. 377, 132 S.Ct. 1657, 182 L.Ed.2d 662 (2012).................................. 14

*Flagg Bros., Inc. v Brooks,* 436 U.S. 149, 155-57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) ......... 25

   *Geiling v Wirt Fin. Serv. Inc.*, No. 14-11027, 2014 WL 8473822, at *68 (ED.Mich. Dec. 31,
   2014), report and recommendation adopted in part and rejected in part, 2015 WL 1529866
   (E.D. Mich. Mar. 31, 2015) ................................................................................................... 26

*Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999)................................................... 38

*Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989).......................................................... 17

*Griffin v Breckenridge*, 403 US 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)........................ 31

*Hansen v Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975) ............................................................... 28

*Haverstick Enterprises, Inc. v Financial Federal Credit, Inc.*, 32 F3d 989 (6th Cir. 1994) ......... 31

*Hicks v Resolution Trust Corp.*, 970 F2d 378, 382 (7th Cir. 1992)............................................... 32

*Hill v McClellan*, 490 F.2d 859, 860 (5th Cir. 1974) .................................................................... 28

*Hood* v. Keller, 341 F.3d 593, 597 (6th Cir. 2003) (citations omitted) ........................................ 21

*Horen v Bd. of Educ. of Toledo City Sch. Dist.*, 594 F.Supp.2d 833, 842 (N.D. Ohio) .............. 27

*Horen*, at 842-43 ........................................................................................................................... 29

*Jackson v Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) .. 28

*Kurz v State of Michigan*, 548 F.2d 172, 174 (6th Cir. 1977) ...................................................... 28

*Lakeshore Comm. Hosp. v Perry*, 212 Mich.App 396, 401, 538 NW.2d 24 (1995) ................... 34

   *Lakeview Trust v Schauer*, 2017 WL9249433 *6 (D.Minn.) report and recommendation adopted
   2017 WL3575851 (D.Minn. Aug. 18, 2017) ......................................................................... 18

*Limback v. Oakland Co. Bd. of Commr's,* 226 Mich App 389, 395 (1997) ................................. 23

{03963355 v1}

*Magid v Oak Park Racquet Club Assoc., Ltd.*, 84 Mich.App 522, 529, 269 NW.2d 661, lv. den 404 Mich 805 (1978) ................................................................................................ 40

*Mori v. Greater Cleveland Reg'l Trans. Auth.* 895 F.2d 266, 269 ............................... 13

*Peterson Novelties, Inc.* v. *City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002)............... 20

*Peterson*, at 390 ........................................................................................................ 20

*Pieper* v. *Am. Arbitration Assoc.*, 336 F.3d 458, 460 (6th Cir. 2003) ........................... 20

*Pieper*, 336 F.3d at 462 ............................................................................................. 21

*Podiatric Med. Assoc. v Nat'l Foot Care Program, Inc.*, 175 Mich.App 723, 736, 438 N.W.2d 349 (1989) ........................................................................................................... 35

*Polk City v Dodson*, 454 US 312, 318 (1981) ............................................................ 26

*Polk County v Dodson*, 454 U.S. 312, 329, 102 S.Ct. 445, 70 L.Ed. 509 (1981)............ 26

*Prince v. The Arkansas Bd. Of Examiners in Psychology,* 380 F.3d 337, 340 (8th Cir. 2004)..... 22

*Richardson v. McKnight,* 521 U.S. 399, 409– 411, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997)..... 15

*Richardson, supra,* at 408, 117 S.Ct. 2100 (quoting *Wyatt, supra,* at 167, 112 S.Ct. 1827)....... 15

*Roberts* v. *Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (2000) ....................................... 37

*Rondingo, LLC v. Township of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011) ............................ 13

*Rooker* v. *Fid. Trust Co.*, 263 U.S. 413 (1923) ........................................................... 19

*Sawabini v. Desenberg*, 272 N.W.2d 559, 565 (Mich. Ct. App. 1985) ........................... 37

*Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir. 2003) ............................................. 25

*Sykes v California*, 497 F.2d 197, 202 (9th Cir. 1974) ................................................. 28

*Tidik v Ritsema, et al*, 938 F.Supp 416 (E.D.Mich) (1996) .......................................... 17

*United Brothers of Carpenters and Joiners of America, Local 610, AFL-CIO v Scott*, 463 US 825, 828-829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)................................................. 30

*United Mine Workers v Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)33

*United States v. Hays,* 515 U.S. 737, 742 (1995) ......................................................... 13

*Watts v. Burkhart,* 978 F.2d 269. 274 (6th Cir. 1992) .................................................. 18

*Watts,* 978 F.2d at 273 .............................................................................................. 18

*Wolotsky v Huhn*, 960 F.2d. 1331, 1338 (6th Cir. 1992) ............................................... 33

*Wright v MGM Casino*, 2012WL254133 (E.D. Mich. Jan. 10, 2012) report and recommendation adopted 2012 WL254098 (E.D. Mich. Jan. 26, 2012)........................................................ 30

*Wyatt v. Cole,* 504 U.S. 158, 167, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). .............................. 15

## Statutes

28 U.S.C. §1257 ....................................................................................................... 18

42 U.S.C. Section 1985 .............................................................................................. 25

42 USC §1983 .......................................................................................................... 22

## I.   <u>INTRODUCTION</u>

This case involves a zoning dispute.  The Defendant Township issued a citation to Plaintiffs for using the new barn on their property to serve alcohol, food and have live music.  The citation was litigated, and a compliance order was issued. Plaintiffs then undertook to obtain the necessary licensure from the Michigan Liquor Control Commission and approval from the Township for a special use exception to allow them to use the new barn to serve alcohol and food.  In the meantime, Plaintiffs filed a motion in the zoning violation case as well as a complaint for superintending control claiming that the Township was intentionally delaying in processing Plaintiffs' requests and imposing improper requirements.  All of their claims were dismissed.

Plaintiffs have now recast their claims and filed this lawsuit against the Township, the Township's officials, planning commission members, and building department as well as the private sector attorneys who represented those Defendants in connection with Plaintiffs' zoning violation and request for a special use exception.   Plaintiffs claim that the Defendants' actions violated Plaintiffs' constitutional rights and give rise to a variety of state law claims.  Each and every claim against the Defendant Attorneys fails to state a claim upon which relief may be granted.  Plaintiffs' §1983 and §1985 claims against the Defendant Attorneys are barred by immunity and the Rooker-Feldman doctrine and, therefore, there is no

pendent jurisdiction over Plaintiffs' state law claims.  Even if there was, each one of Plaintiffs' state law claims also fails to state a claim upon which relief may be granted.

## II.     SUMMARY OF FACTS ALLEGED IN THE COMPLAINT

### A.     Plaintiffs obtain a small wine maker license

Plaintiffs, Benjamin Martin and Sarah Martin, are the owners of Plaintiff Soil Friends, LLC - a farm located in an agricultural-residential zoning district in Comstock Township, Michigan (hereinafter collectively referred to as "Plaintiffs"). ECF No. 20, Page ID 265-270 Paragraphs 1-3 and 27-28.  In 2017, Plaintiffs decided to expand their business to manufacture wine.  To that end, Plaintiffs submitted an application to the Michigan Liquor Control Commission ("MLCC") for a small wine maker license.  As part of the application process, Plaintiffs needed to obtain a recommendation from Defendant Comstock Charter Township - the local legislative body (hereinafter the "Township").   On October 16, 2017, the Township recommended that the Plaintiffs' application for a small wine maker license with the MLCC be approved.  ECF No.20-3 Page ID 344 and ECF No. 20-4 Page ID 346. On December 19, 2018, the MLCC issued Plaintiffs a small wine maker license and an on-premises tasting room permit.  In June of 2018 and May of 2019, the MLCC issued Plaintiffs permits for two outdoor service areas.  ECF No. 20 Page ID 271 paragraph 33-34.

**B.     Plaintiffs build a new barn on their property to expand their operations**

Shortly after obtaining these licenses/permits, in 2019, Plaintiffs built a new barn (hereinafter the "New Barn") on their property to further expand their operations.  ECF No.20 Page ID 271 paragraph 36.  After construction of the New Barn was completed, Plaintiffs started using the New Barn as a farm market and for hard cider tastings.  ECF No. 20 Page ID 272 paragraph 43.  Plaintiffs did this *without* having first obtained additional licensure from the MLCC or approval from the Township.

In 2022, the Township learned that Plaintiffs were offering the opportunity to either hold private parties/events in the New Barn or to rent the New Barn for such events.  On April 1, 2022, the Township notified Plaintiffs that such a use would require approval from the Township for a special use exception as well as building code approval.  ECF No. 20-5 Page ID 348-350.  That same day, Plaintiffs agreed to remove the event offering in the New Barn and seek the necessary approvals.  Nonetheless, Plaintiffs continued to use the New Barn for hard cider tastings and as a market.  ECF No.20 Page ID 272.

**C.     The Zoning Violation Citation**

On October 19, 2022, the Township issued a citation to Soil Friends, LLC c/o Benjamin Martin for violating the Township's zoning ordinance and the Unlawful Building provision of the Michigan Construction Code (184.000 and 300.900) (the

{03963355 v1}

3

"Zoning Citation"). Specifically, the Zoning Citation indicated that there was no zoning approval or permits allowing for how the New Barn was being used, *i.e.* serving food and alcohol and having live music.  ECF No. 1-9 Page ID 83.

Pursuant to Article 9.00 Section 300.900 of the Township's Zoning Ordinance, the main permitted uses in the Township's Agricultural-Residential district are agricultural and farming residential.  Section 300.903 identifies uses that are only allowed by special use exception including the following:

a)  Wineries including tasting rooms and sales (300.903 g)
b)  Event barn, pursuant to Section 21.24 (300.903 cc) (Exhibit 1)

Section 300.2124 further provides that event barns are a special use exception in all Agricultural-Residential Districts.  Section 300.20130a defines an "Event Barn" as: "A barn used as a venue for gatherings such as weddings, private parties, meetings and similar events."  A copy of the applicable Ordinance is attached as Exhibit 1.

### D.     The October 27, 2022 Township Planning Commission Meeting

On October 27, 022, the Township's Planning Commission held a meeting to discuss several pending rezoning requests including the uses at the Plaintiffs' farm. ECF No. 20-10 Page ID 362-368.  Defendant Catherine Kaufman was present at this meeting as attorney for the Township and its planning commission.  When the issue of Plaintiffs' farm came up, attorney Kaufman stated:

"Hanna asked if it might include the operation of a restaurant. He patronized the business on North 33rd Street before he knew it was in violation of Township ordinances.

Kaufman stated that under the Right to Farm Act, a commercial agricultural production farm following GAAMPs can operate a farm market if in compliance with the GAAMPs specific to a farm market. There are certain things the farmer can do with a farm market but anything beyond that is subject to township rules and regulations.

She suggested that the Farm Market GAAMPs be the starting point for the zoning language and add uses as may be appropriate. The Township does not have to allow everything happening at the site on North 33" Street.

Nichols asked if an agritourism use would be a special exception use.

Kaufman stated that communities usually do make it a special use so that the impact on the neighbors can be considered against what is being proposed."  ECF No. 20-10 Page ID 367

## E.    The Hearing on the Zoning Violation

On November 18, 2022, an informal hearing was held before Magistrate Nicholas Schaberg in the 8th District Court regarding Plaintiffs' zoning ordinance violation and violation of the unlawful building provision (the "Zoning Violation Case").  A District Magistrate hearing is similar to a civil infraction traffic case in which only the Defendant, the Magistrate and the issuing officer are present. Defendant Roxanne Seeber, is a private sector attorney hired to represent the Township in  Zoning Violation and other ordinance violation cases in the District

Court.  Upon a finding of responsibility, after a hearing, by admission, or by default, the magistrate considers entering an order prepared by Attorney Seeber.  At the conclusion of the hearing in the Zoning Violation Case, the magistrate entered the proposed Order Requiring Compliance with Ordinance ("Compliance Order") prepared by attorney Seeber.

Pursuant to the terms of the Compliance Order, Plaintiffs were Ordered, in part, to:

(1) Within 15 days, eliminate the commercial use and access to the new barn to anyone other than the owner or their farm laborers;

(2) Within 15 days, eliminate the use and occupancy of the new barn except for agricultural uses; and

(3) 15 days after the entry of the order, to cease operating a commercial business entity on the property and not allow live music, access to the interior of the barn, retail sales, food, alcohol or beverage service on the property.  ECF No. 1-12 Page ID 96-99.

**F.   Plaintiffs file a Motion for Reconsideration of the Compliance Order**

On December 2, 2022, Plaintiffs filed a Motion for Reconsideration of the Compliance Order.  Although no written order was entered denying the motion, the Court advised Plaintiffs that their motion was denied.  ECF No. 20 Page ID 283-286 ¶ 99 and 113.

### G.  The December 5, 2022 Township Board Meeting

On December 5, 2022, attorney Kaufman attended a Township board meeting in her capacity as attorney for the Township.  Plaintiffs allege that at this meeting Kaufman stated that:  (1) Plaintiffs' additional uses were not covered by their MLCC license; and (2) that the Township's prior approval of Plaintiffs' application for a license from the MLCC was conditioned solely under the Right to Farm accessory agricultural use.  ECF No. 20, Page ID 284, paragraphs 104 and 107.

### H.  Plaintiffs file a Complaint for Superintending Control

On January 18, 2023, Plaintiffs filed a Complaint for Superintending Control against Magistrate Schabey with the Kalamazoo County Circuit Court claiming, in pertinent part, that:

- the magistrate violated Michigan law by issuing more than a fine to the Farm for their ordinance violation.

- the Compliance Order violated the Plaintiffs' due process rights because: (1) an attorney for the Township was present at the informal hearing; and (2) in the Compliance Order the magistrate improperly issued an injunction for the zoning violation.

- the zoning ordinance sought to be enforced is preempted by Michigan's Right to Farm Act and the Michigan Liquor Control Code.

- the magistrate refused to consider Plaintiffs' Motion for Reconsideration.

- Plaintiffs' Due Process rights were violated because the Compliance Order was issued without a formal hearing.  ECF No.1-17 Page ID 120-140.

## I.   Plaintiffs and the Township stipulate to an amended Compliance Order

On February 21, 2023, just three months after the Compliance Order was entered, Plaintiffs (through their counsel) and the Township agreed to a Stipulated Order Amending the November 18, 2022 Compliance Order that was entered by the Court in the Zoning Violation Case.  ECF No.1-18 Page ID 142-145. (hereinafter the "Amended Compliance Order").  The Amended Compliance Order clarified that the restrictions in the Order were limited to the New Barn.  ECF No. 1-18 Page ID 142-145.  The Amended Compliance Order further provided that:

> "7.    Within twenty-one (21) days, Soil Friends shall submit an application for special exception with the Township for use of the red barn for a winery tasting room and wine production space.  The Township shall review the application in good faith and process the application in a timely manner without undue delay."   ECF No. 1-18, Page ID 144, paragraph 7.

On the same day,  Plaintiffs filed a Notice of Dismissal with the Circuit Court in the Superintending Control Case.  Three days later, on February 24, 2024, an Order was entered dismissing Plaintiffs' Complaint for Superintending Control with prejudice. A copy of the Order dismissing the Complaint for Superintending Control is attached as Exhibit 2.

{03963355 v1}

**J.      Plaintiffs ask the MLCC redefine their license to include the New Barn**

Because Plaintiffs' existing license from the MLCC did not include the New Barn, Plaintiffs filed an application with the MLCC to "redefine" the licensed premises to include the New Barn.  Pursuant to administrative rule R436.1023(2) of the Michigan Liquor Control Commission, a licensee must obtain prior approval from the MLCC before adding space to the physical structure of the licensed premises or redefining the licensed premises.  On April 27, 2023, the MLCC issued a Redefined Licensed Premises Approval Order to Plaintiffs allowing Plaintiffs to use the New Barn to manufacture wine and conduct on-premises tasting room activities.  The MLCC Order specifically provided that:

> "Approval of the request does not waive the requirement that the licensee be in compliance with all state and local building, plumbing, zoning, sanitation, and health laws, rules, and ordinances….Under administrative rule R436.1003(1), the licensee shall comply with all state and local building, plumbing, zoning, sanitation, and health laws, rules , and ordinances as determined by the state and local law enforcement officials who have jurisdiction over the license….Approval by the Michigan Liquor Control Commission does not waive these requirements.  The licensee must obtain all other required licenses, permits, and approvals *before opening the business for operation*." (emphasis added).

A copy of the MLCC Order is attached as Exhibit 3.

**K.     The Township Approves Plaintiffs' special use exception on April 27, 2023**

On April 27, 2023, the Township approved both Plaintiffs' special use exception and site plan subject to approval of the Fire Marshall and Kalamazoo County Road Commission.  A copy of the minutes is attached as Exhibit 4.

**L.     Plaintiffs file a Motion for Show Cause**

Just two months after the MLCC approved redefining the scope of Plaintiffs' license to include the New Barn (subject to compliance with all state and local rules and ordinances as determined by the state and local officials), on June 30, 2023, Plaintiffs filed a Motion for Order to Show Cause ("Show Cause Motion") in the Zoning Violation Case, requesting that the Township be held in Contempt.  A copy of the Show Cause Motion is attached as Exhibit 5.  In support of that motion, Plaintiffs claimed that the Township was not acting in good faith and was not processing Plaintiffs' application for a special use exception in the New Barn in a timely manner and without undue delay as required by the Amended Compliance Order.  Specifically, Plaintiffs alleged: that "The Township's tactics have delayed the approval process without a good faith basis for doing so...".  Plaintiffs requested that the court:

> B.     Enter an order declaring that no further barriers will prevent Soil Friends from operating its barn as a wine manufacturing facility and tasting room, and that Soil Friends *resume its wine manufacturing and tasting room operations in the barn* immediately upon MLCC license issuance which the Township shall consent to;

{03963355 v1}

10

C.      Order Comstock Charter Township to pay Soil Friends' actual costs and attorney fees incurred in bringing forth this motion within seven (7) days;

D.      *Order Comstock Charter Township* to reimburse Soil Friends all fees imposed by the Township upon Soil Friends and *to pay Soil Friends the profits it as lost due to the Township's contempt.*

E.      Award Soil Friends any other relief as this Court deems necessary or just. (emphasis added).

*See* Exhibit 5.

On July 11, 2023, the Township filed an Answer to Plaintiffs' Motion for Show Cause.  A copy of that Answer is attached as Exhibit 6.  On August 21, 2023, the Court entered an Order Denying Plaintiffs' Motion for Show Cause for the reasons stated on the record.  A copy of that order is attached as Exhibit 7.

**M.      Plaintiffs file this lawsuit**

On December 1, 2023, Plaintiffs filed a twelve (12) count complaint against the Township, the Township's building department, several Township officials, members of the Township's planning commission (hereinafter collectively the "Township Defendants") and the attorneys who represented the Township (Defendants Roxanne Seeber and Catherine Kaufman hereinafter collectively the "Defendant Attorneys") claiming that the Township and the other defendants acted improperly in addressing Plaintiffs' zoning and building use violations and have delayed in processing Plaintiffs' subsequent request for a special use exception.

Plaintiffs claim that the Defendants' conduct violated Plaintiffs' constitutional rights and otherwise caused them to suffer damages.

On February 16, 2024, Plaintiffs filed a First Amended Complaint.  Although the First Amended Complaint contains the same twelve counts, only six counts in Plaintiffs' First Amended Complaint are against the Defendant Attorneys.  For the reasons detailed below, each and every claim asserted against the Defendant Attorneys must be dismissed as a matter of law.

## LAW AND ANALYSIS

### A.    Standard of Review

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims.  The Court may properly grant a motion to dismiss when no set of facts exists that would allow the plaintiff to recover. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir.1993).  When presented with a Fed. R. Civ. P. 12(b)(6) motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008), citations omitted.  Consideration of extrinsic materials need not convert a motion to dismiss into a motion for summary judgment, "so long as

[the materials] are referred to in the complaint and are central to the claims contained therein." *Rondingo, LLC v. Township of Richmond,* 641 F.3d 673, 681 (6th Cir. 2011), citing *Bassett, supra*.

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Mori v. Greater Cleveland Reg'l Trans. Auth.* 895 F.2d 266, 269.  Moreover, "[t]he federal courts are under an independent obligation to examine their own jurisdiction." *United States v. Hays,* 515 U.S. 737, 742 (1995).

### B.  Plaintiffs' claims against the Defendant Attorneys must be dismissed because they are entitled to immunity

The Defendant Attorneys are partners in the law firm of Bauckham, Thall, Seeber, Kaufman & Koches, P.C. – a law firm that specializes in the practice of township law in Michigan.  *See*  [https://www.michigantownshiplaw.com/about-us/our-history/](https://www.michigantownshiplaw.com/about-us/our-history/)  Defendant Seeber "is the firm's lead prosecutor for zoning and code violations.   She works with and advises zoning administrations, ordinance enforcement officers, building officials, and others on topics such as dangerous building, ordinance violations and zoning and planning issues".  *See* [https://www.michigantownshiplaw.com/attorneys/roxanne-c-seeber/](https://www.michigantownshiplaw.com/attorneys/roxanne-c-seeber/)       Defendant Kaufman's practice focuses on "land use, planning and zoning issues.  She assists planning commissions, zoning boards of appeal, private citizens, and environmental groups on issues ranging from zoning ordinance applications to complex site

development."  *See* https://www.michigantownshiplaw.com/attorneys/catherine-p-kaufman/  It is undisputed that, at all times relevant hereto, the Defendant Attorneys were private sector attorneys acting in their capacity as attorneys for the Township Defendants.  ECF No. 20, Page ID 268 paragraphs 18 and 19 and Page ID 276 paragraph 61, Page ID 278 paragraphs 72-73, Page ID 284 paragraph 104).

In *Filarsky v Delia*, 566 U.S. 377, 132 S.Ct. 1657, 182 L.Ed.2d 662 (2012), the United States Supreme Court held that a private attorney that is retained by a municipality to act on its behalf is protected by the same immunity that would be afforded to the attorney if she were a public employee.  As the Supreme Court explained:

> "Nothing about the reasons we have given for recognizing immunity under § 1983 counsels against carrying forward the common law rule. As we have explained, such immunity "protect[s] government's ability to perform its traditional functions." *Wyatt v. Cole,* 504 U.S. 158, 167, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). It does so by helping to avoid "unwarranted timidity" in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits._ *Richardson v. McKnight,* 521 U.S. 399, 409– 411, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997).
>
> We have called the government interest in avoiding "unwarranted timidity" on the part of those engaged in the public's business "the most important special government immunity-producing concern." *Id.,* at 409, 117 S.Ct. 2100.
>
> ***

Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to " 'ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service.' " *Richardson, supra,* at 408, 117 S.Ct. 2100 (quoting *Wyatt, supra,* at 167, 112 S.Ct. 1827).  The government's need to attract talented individuals is not limited to full-time public employees. Indeed, it is often when there is a particular need for specialized knowledge or expertise that the government must look outside its permanent work force to secure the services of private individuals.

*** 

To the extent such private individuals do not depend on the government for their livelihood, they have freedom to select other work—work that will not expose them to liability for government actions. This makes it more likely that the most talented candidates will decline public engagements if they do not receive the same immunity enjoyed by their public employee counterparts.

Sometimes, as in this case, private individuals will work in close coordination with public employees, and face threatened legal action for the same conduct. See App. 134 (Delia's lawyer: "everybody is going to get named" in threatened suit). Because government employees will often be protected from suit by some form of immunity, those working alongside them could be left holding the bag—facing full liability for actions taken in conjunction with government employees who enjoy immunity for the same activity. Under such circumstances, any private individual with a choice might think twice before accepting a government assignment.

The public interest in ensuring performance of government duties free from the distractions that can accompany even routine lawsuits is also implicated when individuals other than permanent government employees discharge these duties. See *Richardson, supra,* at 411, 117 S.Ct. 2100."

In *Adams v Tausend*, 2017 WL 9470710 (E.D. Mich. 2017), the court held that attorneys who represent a township in pursuing ordinance violations are entitled to *absolute immunity*.  In that case, the plaintiff asserted claims under 42 U.S.C. §1983 arising out of violations similar to the violations at issue in this case (Violation of the First Amendment right to free speech, Violation of the Fifth Amendment right to be free from public takings, Violation of the Fourteenth Amendment right to due process and equal protection).  Like the Plaintiffs in this case, the plaintiffs in *Adams* also asserted a claim of intentional infliction of emotional distress.  The plaintiff in *Adams* alleged that these violations/warnings arose out of the defendant township's issuance and handling of tickets/citations that were issued to plaintiff by the defendant township, the township's building official and others including the attorney who handled those matters on behalf of the township.  The magistrate issued a report and recommendation (adopted by the Court) that the attorney for the township was entitled to absolute prosecutorial immunity:

> In this case, Adams alleges that Kloc did no more than pursue actions against him for violation of township ordinances, and for Adams' failure to comply with court orders regarding those nuisance violations. Absolute prosecutorial immunity would protect Kloc from these claims even if he acted wrongfully or maliciously. *See Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989)."

In *Tidik v Ritsema, et al*, 938 F.Supp 416 (E.D.Mich) (1996), the court made a similar finding.  As noted by the Court:

"Similarly, defendants Lynn Watson, Ritsema, March, Manville and Lemire also qualify for absolute immunity. The doctrine of absolute judicial immunity is extended to persons whose duties are essentially adjudicative or prosecutorial in nature. *Watts v. Burkhart,* 978 F.2d 269. 274 (6th Cir. 1992) (extending absolute immunity to medical board examiners) (citing rational of *Briscoe v. LaHue,* 460 U.D. 325, 103 S.Ct 1108, 75 L.Ed2 96 (1983)).

The immunity of participants in the judicial process stems from specific characteristics of the process itself. *Watts,* 978 F.2d at 273 (citing *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913-14). For instance, "[t]he controversies with which the process deals are often intense, and the loser, given an opportunity to do so, will frequently charge the participants in the process with unconstitutional animus . . ." *Id.* at 273. Therefore, "[a]bsolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz,* 438 U.S. at 512, 98 S.Ct. at 2913. Under these standards, defendants Lynn Watson, court clerk for the 3rd circuit court, John Lemire, Referee for Friend of the Court, and David March, staff attorney for Friend of the Court, are immune from suit. Their duties clearly qualify as adjudicative or prosecutorial."

(*See also*, *Lakeview Trust v Schauer*, 2017 WL9249433 *6 (D.Minn.) report and recommendation adopted 2017 WL3575851 (D.Minn. Aug. 18, 2017).  "By initiating and pursuing an enforcement action seeking to ensure compliance with local zoning ordinances, Defendant (an attorney) was acting in a role analogous to that of prosecutor.  Therefore, Defendant is entitled to absolute immunity."

Under the allegations pled in the First Amended Complaint, the Defendant Attorneys were always acting in their capacity as attorneys for the Township

{03963355 v1}

17

Defendants when they pursued Plaintiffs' ordinance violations and assisted the Township and its planning commission and building officials in connection with Plaintiffs' application for special use exception.   Therefore, absolute immunity protects the Defendant Attorneys from Plaintiffs' claims, even if they acted wrongfully or maliciously, as Plaintiffs allege.   For this reason alone, all of Plaintiffs' claims against the Defendant Attorneys must be dismissed with prejudice.

### C.   Plaintiffs' claims against the Defendant Attorneys are barred by the Rooker-Feldman doctrine

Pursuant to the *Rooker-Feldman* doctrine, federal district courts do not have subject matter jurisdiction to review state court judgments.  *Rooker* v. *Fid. Trust Co*., 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462 (1983); *Peterson Novelties, Inc*. v. *City of Berkley*, 305 F.3d 386, 390 (6th Cir. 2002). Rather, the United States Supreme Court is the only federal court with jurisdiction to review state court decisions.  28 U.S.C. §1257.  The doctrine applies "even if those challenges allege that the state court's action was unconstitutional".  *Feldman*, 460 U.S.at 486.  The *Rooker-Feldman* doctrine not only prohibits the federal courts from engaging in appellate review of state court judgments, it also prevents the federal courts from reviewing any claims that are "inextricably intertwined" with the state court judgment.  *Peterson*, at 390.  "In practice this means that when granting relief on the federal claim would imply the state court judgment on the other issues

was incorrect, federal courts do not have jurisdiction". *Pieper* v. *Am. Arbitration Assoc.*, 336 F.3d 458, 460 (6th Cir. 2003).

There is only one exception to the *Rooker-Feldman* doctrine.  A federal court may exercise jurisdiction "where the plaintiff's claim is merely 'a general challenge to the constitutionality of the state law applied in the state action', rather than a challenge to the law's application in a particular state case." *Hood* v. *Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (citations omitted).  To determine if this exception applies, the court "cannot simply compare the issues involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint, 'but instead' must pay close attention to the relief sought by the federal-court plaintiff.'" *Id*. (quoting *Bianchi* v. *Rylairsdam*, 334 F.3d 895, 900 (9th Cir. 2003).  If the requested relief is to undo the effect of a state court decision, the court lacks subject matter jurisdiction. *Feldman*, 460 U.S. at 486.  The Sixth Circuit has adopted the majority rule that the *Rooker-Feldman* doctrine applies not only to final state court judgments on the merits, but also to interlocutory orders of the state court. *Pieper*, 336 F.3d at 462.

As aptly noted by one court:

> "Once a party has litigated in state court, however, he 'cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a [section]1983 action". *Bechtold v City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997).  In other words, if a litigant has raised and lost claims in state court, he may not recast those claims under §1983 and try again."

*Prince v. The Arkansas Bd. Of Examiners in Psychology,*
380 F.3d 337, 340 (8th Cir. 2004).

In this case, Plaintiffs do not challenge the constitutionality of any state law or township ordinance.  Rather, Plaintiffs are challenging the application of the law in two underlying state cases.

As demonstrated earlier, Plaintiffs filed a state court complaint for Superintending Control against the magistrate who issued the Compliance Order in the Zoning Ordinance Case.   In their Complaint for Superintending Control, Plaintiffs claimed that the Compliance Order that the magistrate entered  violated Plaintiffs' due process rights because: (1) the Compliance Order was entered following an informal hearing during which the Township was represented by counsel when the statute provides otherwise; and (2) the Compliance Order exceeded the authority of the magistrate because it not only imposed a fine but also prohibited Plaintiffs from engaging in certain activities.  *See* First Amended Complaint at Exhibit 16, ECF 20-16, Page ID 401 - 403.[1]  Plaintiffs' Complaint for Superintending Control was voluntarily dismissed with prejudice by Plaintiffs.  *See* Exhibit 2.  This dismissal with prejudice constitutes a decision on the merits. *Limback v. Oakland Co. Bd. of Commr's,* 226 Mich App 389, 395 (1997).

---

[1] In fact, MCL 600.8727(5) provides that, in addition to a fine, the magistrate may issue an order under §8302.  MCL 600.8302(4) provides that a magistrate may issue any order necessary to enforce an ordinance.  The magistrate's authority is not limited to imposing a fine.

In this case, Plaintiffs also allege that the Compliance Order violated their due process rights and was otherwise wrongful for the same reasons alleged in their Complaint for Superintending Control, *i.e.* because Defendant Attorney Seeber appeared at the informal hearing on behalf of the Township and prepared the proposed order and because the magistrate allegedly exceeded the scope of his authority by enjoining certain activities.  ECF No. 20 Page ID 278-280, 299-300, 307-308, 315, and 326.  Pursuant to the *Rooker-Feldman* doctrine, because Plaintiffs already unsuccessfully litigated this claim in state court, they "cannot circumvent *Rooker-Feldman* by recasting" their lawsuit as a §1983 claim.  *Bechtold*, at 1065.

Plaintiffs also filed a Show Cause Motion in the Zoning Violation Case claiming that the Township was not acting in good faith in processing Plaintiffs' application for a special use exception.  In their motion, Plaintiffs requested that the court enter an order "allowing Plaintiffs to resume wine manufacturing and tasting room operations in the new barn immediately" and "requiring the Township to pay Plaintiffs the profits they lost" during their closure (i.e. while the Compliance Order was in effect).  *See* Exhibit 5.  On August 21, 2023, following a hearing, the court entered an order denying Plaintiffs' motion.  *See* Exhibit 7.

In this case, Plaintiffs once again allege that the Township and the other Defendants did not act in good faith in processing Plaintiffs' request for a special use exception and are requesting that the Court award them damages for the profits

they lost during the time period that the Compliance Order was in effect.  ECF No. 20 Page ID 287 paragraph 118, Page ID 289-90 paragraphs 132, 133, and 139, Page ID 298-299 paragraphs 180-183, Page ID 300-302, Page ID 307 paragraph 225-226, Page ID 308 paragraph 229-230, Page ID 317 paragraph 272, and Page ID 336-337 paragraphs 382-383.  However, the state court already denied Plaintiffs' motion on this very issue.

This lawsuit is nothing more than a "recasted" attempt to undo the state courts' rulings. Plaintiffs do not claim that any law or ordinance that the state courts applied are unconstitutional.  Rather, they complain about the way the state courts applied those laws to the facts of those cases.  Therefore, this Court does not have subject matter jurisdiction over Plaintiffs' claims.

### D.   Plaintiffs' §1983 claim in Count I must be dismissed as to the Defendant Attorneys

Not only are Plaintiffs' claims against the Defendant Attorneys barred by immunity and the *Rooker-Feldman* doctrine, each one of Plaintiffs' claims against the Defendant Attorneys otherwise fails to state a claim upon which relief may be granted.

In Count I of their First Amended Complaint, Plaintiffs allege that the Defendants violated Plaintiffs' First and Fourteenth Amendment rights and are liable under 42 USC §1983.  Specifically, Plaintiffs allege that, in retaliation for Plaintiffs' constitutionally protected speech, Defendants "in concert and with others acting

under color of state law" imposed "…onerous burdens on their business plans and approvals, filing frivolous complaints with state agencies, and delaying to the extent possible any opportunity for Soil Friends to conduct its business." ECF No. 20 Page ID 298 paragraph 181.

To state a cause of action under §1983, Plaintiffs must allege that they were deprived of a right secured by either the United States Constitution or federal statute *by a person acting under color of law*.  *Flagg Bros., Inc. v Brooks,* 436 U.S. 149, 155-57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Spadafore v Gardner*, 330 F.3d 849, 852 (6th Cir. 2003).  An individual is acting "under color of state law" when they are exercising "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v Dodson*, 454 U.S. 312, 329, 102 S.Ct. 445, 70 L.Ed. 509 (1981).

Plaintiffs' §1983 claim fails as to the Defendant Attorneys because the Defendant Attorneys were not acting under color of state law.  At all relevant times, the Defendant Attorneys were acting as attorneys for the Township.  ECF No. 20 Page ID 268 paragraphs 18-19 and Page ID 278 paragraph 73.  It is well-established that private sector attorneys do not become state actors by representing state or local governments. *Polk City v Dodson*, 454 US 312, 318 (1981); See also *Geiling v Wirt Fin. Serv. Inc*., No. 14-11027, 2014 WL 8473822, at *68 (ED.Mich. Dec. 31, 2014), report and recommendation adopted in part and rejected in part, 2015 WL 1529866

(E.D. Mich. Mar. 31, 2015), *Blackwell v Allen*, No. 22-1300, 2022 WL 17832191, at *6 (6th Cir. Dec. 21, 2022).  Since the Defendant Attorneys were not acting under color of state law (i.e. are not state actors), Plaintiffs' §1983 claim against these Defendants must be dismissed.

Although Count I of Plaintiffs' First Amended Complaint contains conclusory allegations that the Defendant Attorneys acted "in concert" with others "acting under color of state law", these conclusory allegations of a conspiracy do not save Plaintiffs' §1983 claim.  "An attorney representing a client cannot 'conspire' within the attorney-client relationship." *Horen v Bd. of Educ. of Toledo City Sch. Dist.*, 594 F.Supp.2d 833, 842 (N.D. Ohio); citing *Doherty v Am. Motors Corp.*, 728 F.2d 334, 339-340 (6th Cir. 1984) (holding that a company cannot conspire with in-house or outside counsel).  At all times relevant hereto, the Defendant Attorneys were acting in the course of representing their clients – the Township Defendants.  All of the Defendant Attorneys' Co-Defendants in the within action were either acting in their capacity as officials of the Township or members of the Township's planning commission. Therefore, all of the Defendant Attorneys' Co-Defendants were clients. Since the Defendant Attorneys cannot conspire with their clients, the Defendant Attorneys cannot conspire with any of their Co-Defendants in this case.[2]

---

[2] The Defendant Attorneys' Co-Defendants are also immune from liability.  As private citizens, the Defendant Attorneys cannot be liable for conspiring with their Co-Defendants to violate Plaintiffs' civil rights 'under color of law' when its Co-Defendants are entirely immune from these

Since the Defendant Attorneys were not acting under color of state law and cannot conspire with their Co-Defendants (all of whom are their clients), Count I of Plaintiffs' First Amended Complaint must be dismissed as to the Defendant Attorneys.

### E.  Plaintiffs' §1983 claim in Count III must be dismissed as to the Defendant Attorneys

In Count III of their First Amended Complaint, Plaintiffs allege that the Defendants are liable under §1983 for violating Plaintiffs' Due Process rights.  To establish a procedural due process claim under §1983, Plaintiffs also must prove that the Defendant Attorneys were acting under color of state law.  As demonstrated above, the Defendant Attorneys are not state actors and, therefore, they cannot be held liable under §1983 for a Fourteenth Amendment violation.  See *Jackson v Metropolitan Edison Co.*, 419 U.S. 345, 349, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ("[P]rivate conduct, however discriminatory or wrongful", falls outside the scope of the Fourteenth Amendment." *Horen*, at 842-43.  Further, as demonstrated earlier, Plaintiffs' conclusory allegations of a conspiracy with state actors (the Defendant Attorneys' Co-Defendant clients) does not save their §1983 claim because the Defendant Attorneys cannot conspire with their clients.

---

claims.  *Kurz v State of Michigan*, 548 F.2d 172, 174 (6th Cir. 1977) (citing *Hansen v Ahlgrimm*, 520 F.2d 768, 770 (7th Cir. 1975); *Sykes v California*, 497 F.2d 197, 202 (9th Cir. 1974); and *Hill v McClellan*, 490 F.2d 859, 860 (5th Cir. 1974).

**F.    Plaintiffs' Section 1985 claim in Count V must be dismissed as to the Defendant Attorneys**

Count V of Plaintiffs' First Amended Complaint is brought under 42 U.S.C. Section 1985.

Plaintiffs allege that the "Defendants have conspired to purposefully interfere with Plaintiffs' civil rights including his exercise of free speech and due process of law in violation of the Constitution"  ECF No. 20 Page ID 317, paragraph 275. Plaintiffs' §1985 claim against the Defendant Attorneys must be dismissed for several reasons.

The elements of a §1985(3) claim are:

"(1)    a conspiracy;

(2)    for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and

(3)    an act in furtherance of the conspiracy; whereby a personal is either injured in his person or property or deprived  of any right or privilege of a Citizens of the United States."

*United Brothers of Carpenters and Joiners of America, Local 610, AFL-CIO v Scott*, 463 US 825, 828-829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

First, it is well-established that an attorney's conduct within the scope of representing a client cannot form the basis of a §1985 claim.  *Wright v MGM Casino*,

2012WL254133 (E.D. Mich. Jan. 10, 2012) report and recommendation adopted

2012 WL254098 (E.D. Mich. Jan. 26, 2012).  As aptly noted by the magistrate:

> "…the conduct complained of by plaintiff is nothing more than the Dickinson, Wright defendants acting within the scope of their representation of their client and this, cannot form the basis of a Section 1985 conspiracy.  See, eg *Farese v Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) ("an attorney's conduct within the scope of representation of a client is immune from any allegation of a Section 1985 conspiracy").

Likewise, all of the conduct about which Plaintiffs complain in this case is nothing

more than the Defendant Attorneys' conduct within the scope of their representation

of their clients.  For this reason alone, the Defendant Attorneys are immune from

Plaintiffs' claim of a §1985 conspiracy.

Dismissal of this claim is also mandated because Plaintiffs cannot satisfy the

second element of a §1985(3) claim.  With respect to the second element, the

Supreme Court has specifically determined that "there must be some racial, or

perhaps other class-based, invidiously discriminatory animus behind the

conspirators' action."  *Griffin v Breckenridge*, 403 US 88, 102, 91 S.Ct. 1790, 29

L.Ed.2d 338 (1971).  "A class protected by §1985(3) must possess the characteristics

of a discrete and insular minority such as race, national origin, or gender."

*Haverstick Enterprises, Inc. v Financial Federal Credit, Inc.*, 32 F3d 989 (6th Cir.

1994) (citing *Hicks v Resolution Trust Corp.*, 970 F2d 378, 382 (7th Cir. 1992).  "To

sustain a claim under section 1985(3), a claimant must prove both membership in a protected class and discrimination on account of it." *Estate of Smithers ex rel Norris v City of Flint*, 602 F3d 758, 765 (6th Cir. 2020).

In their First Amended Complaint, Plaintiffs allege that:

> Defendants have made it known that Plaintiffs will be continually denied any current or future special use exceptions, site plan reviews, or building permits because of Plaintiffs' character and their Facebook posts against them." ECF No. 20 Page ID 317 paragraph 274.

Even assuming the Township's denial of special use exceptions, site plans or building permits was motivated by a disapproval of Plaintiffs' character and/or Facebook posts, that is not sufficient to give rise to a §1985(3) claim. Plaintiffs have not identified a protected class of which they are a member. Plaintiffs' failure to allege that they were discriminated against because of their membership in a protected class also mandates dismissal of this claim.

### G. The court should decline to exercise of Plaintiffs' remaining state claims

As demonstrated above, all of the Plaintiffs' federal claims against the Defendant Attorneys should be dismissed. Therefore, the remaining state claims (Tortious Interference with Business Relationships, Intentional Infliction of Emotional Distress and Civil Conspiracy) are no longer "pendent" and should also be dismissed. *United Mine Workers v Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). "When a case is dismissed for failure to state a federal

claim... the federal claim does not have substance sufficient to confer subject matter jurisdiction in federal court." *Aschinger v Columbus Showcase Co.*, 934 F.2d 1402, 1413 (6th Cir. 1991).  "Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits." *Wolotsky v Huhn*, 960 F.2d. 1331, 1338 (6th Cir. 1992).

As will be demonstrated, even if this Court were to decide to exercise jurisdiction over Plaintiffs' state law claims, each one of these claims fails to state a viable claim as to the Defendant Attorneys.

### H.   Plaintiffs' tortious interference with business relationship claim in Count VIII must be dismissed as to the Defendant Attorneys

In Count VIII of their First Amended Complaint, Plaintiffs claim that the Defendants tortiously interfered with Plaintiffs' business relationships by effectively closing down Plaintiffs' hard cider business from November 2022 through February 2023 (by virtue of the Compliance Order) without legal authority which caused Plaintiffs to suffer damages.  ECF No. 20 Page ID 326 paragraph 328.

To state a tortious interference with a business relationship claim, Plaintiffs must show:

> 1)   the existence of a valid business relationship or expectancy;
>
> 2)   knowledge on the part of the defendant of that relationship/expectancy;

3)   an intentional interference by the defendant with that relationship/expectancy;

4)   that induced or caused a breach or termination of that relationship/expectancy, and resultant damages to Plaintiffs. *Lakeshore Comm. Hosp. v Perry*, 212 Mich.App 396, 401, 538 NW.2d 24 (1995).

"To establish that a lawful act was done with malice and without justification, the Plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference. Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS Clinical Laboratories v Blue Cross Blue Shield of Michigan*, 217 Mich.App 687, 699, 552 N.W.2d 919 (1996) citing *Feldman v Green*, 138 Mich.App. 360, 369, 360 N.W.2d 881 (1984) and *Podiatric Med. Assoc. v Nat'l Foot Care Program, Inc.*, 175 Mich.App 723, 736, 438 N.W.2d 349 (1989).

Plaintiffs have failed to identify any affirmative acts by these Defendants that corroborate an improper motive or that Defendants acted with malice and without justification. Rather, the Defendant Attorneys actions were undertaken for the legitimate and justified purpose of representing their clients in connection with the zoning and use of Plaintiffs' property. Although Plaintiffs allege that the Defendant Attorneys "were aware that Plaintiffs were producing hard cider and were distributing their product to restaurants, bars, and stores in the area and across the

State of Michigan" ECF No. 20 Page ID 326 paragraph 326, there is no allegation that the Defendant Attorneys undertook the actions they did with the *intent* to harm or interfere with Plaintiffs' business relationship rather than with the intent of representing their client in enforcing compliance with the zoning and use requirements.  Therefore, Count VIII fails to state a claim as to these Defendants.

Further, Plaintiffs do not allege that there was any resultant breach or termination of their business relationships.  Rather, Plaintiffs allege that "in closing Plaintiffs' hard cider business in November 2022 through February 2023, without any authority under the law to do so has caused and will continue to cause a *disruption* in the contracts/business relationships/expectancies of Plaintiffs."  ECF No. 20 Page ID 326, paragraph 328.  Plaintiffs do not allege that the temporary closure of their "cider business" caused any breach or termination of their business relationships.  Rather, Plaintiffs merely allege that Plaintiffs' production was "disrupted" which caused them a loss in profits.  That is not sufficient to state a tortious interference claim.

## I.     The intentional infliction of emotional distress claim in Count XI must be dismissed as to the Defendant Attorneys

In Count XI of their First Amended Complaint, Plaintiffs allege that by virtue of their actions, the Defendants intentionally inflicted emotional distress on Plaintiffs. To maintain an intentional infliction of emotional distress claim, Plaintiffs must show "(1) 'extreme and outrageous' conduct; (2) intent or recklessness; (3)

causation; and (4) 'severe emotional distress'" *Roberts* v. *Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (2000).   "It is initially for the trial judge to decide whether defendant's conduct might reasonably be regarded as so extreme and outrageous as to allow recovery for intentional infliction of emotional distress." *Sawabini v. Desenberg*, 272 N.W.2d 559, 565 (Mich. Ct. App. 1985).   As explained by one court:

> "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community…Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  It does not matter that the defendant has acted with an intent that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999) (citations omitted).

In the 75 pages of their First Amended Complaint, the only conduct Plaintiffs attribute to the Defendant Attorneys about which they complain is:

1. Defendant Seeber's appearance at the informal hearing in the Zoning Violation Case ECF No. 20 Page ID 15 paragraphs 72-77;

2. Defendant Seeber's preparation of a proposed Compliance Order "tantamount to an injunction" that was entered by the magistrate in the Zoning Violation Case ECF No. 20 Page ID 315 paragraphs 263-264;

3. Defendant Kaufman's attendance at the October 27, 2022 Township planning commission meeting when she said that "The Township does not have to allow everything happening at [Soil Friends]. ECF No. 20 Page ID 276, paragraph 61.

4. Defendant Kaufman's attendance at a December 5, 2022 Township board meeting during which Plaintiffs' requested additional uses was discussed. ECF No. 20 Page ID 284, paragraphs 104 and 107.

5. Holding discussions outside the public record to determine the Township's position regarding Plaintiffs' special use exception, site plan approvals and building permits ECF No. 20 Page ID 314 paragraph 260; and

6. The Defendant Attorneys' alleged "failure to thwart or prevent" the other Defendants (their clients) from depriving Plaintiffs of their constitutional rights. ECF No. 20 Page ID 316 paragraphs 269 and 270.

None of this conduct is extreme, outrageous or not to be tolerated by a civilized society. Rather, all of these alleged actions were taken by the Defendant Attorneys in the regular course of representing their clients.

Further, Plaintiffs have not alleged that they suffered *severe* emotional distress as a result of any of these actions. Rather, Plaintiffs have merely alleged that they suffered "significant emotional distress" ECF No. 20 Page ID 335 paragraph 373 and "damage to their mental health" ECF No. 20 Page ID 336 paragraph 377. This is not sufficient to support an intentional infliction of emotional distress claim.

**J.    The civil conspiracy claim in Count XII must be dismissed as to the Defendant Attorneys**

In their final Count, Plaintiffs allege that the Defendants conspired with one another to interfere with Plaintiffs' business, business relationships, business

expectancies and to lower their reputation in the community. ECF No. 20 Page ID 336-337. As demonstrated earlier, at all times relevant hereto, the Defendant Attorneys were acting in their capacity as attorneys for their Co-Defendant clients and, therefore, could not have conspired with their Co-Defendants. Therefore, this claim must also be dismissed for this reason alone.

Further, Plaintiffs cannot satisfy the other elements necessary to support a conspiracy claim. "A conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means". *Fenestra, Inc. v Gulf American Land Corp.*, 377 Mich. 565, 593, 141 NW.2d 36 (1966). To maintain a conspiracy claim, Plaintiffs must prove a separate actionable tort. *Magid v Oak Park Racquet Club Assoc., Ltd.*, 84 Mich.App 522, 529, 269 NW.2d 661, lv. den 404 Mich 805 (1978).

Thus, to pursue a conspiracy claim, Plaintiffs must prove that the Defendant Attorneys committed a separate, actionable tort aside from the alleged conspiracy. As demonstrated earlier, none of the other claims asserted by Plaintiffs in this case are themselves actionable and, therefore, Plaintiffs' conspiracy claim must also be dismissed for this reason.

## **CONCLUSION**

Plaintiffs' First Amended Complaint fails to state a claim upon which relief may be granted as to the Defendant Attorneys and, therefore, the Defendant Attorneys respectfully request that the Court grant their Motion to Dismiss and dismiss the First Amended Complaint as to the Defendant Attorneys, in its entirety.

Respectfully submitted,

 */s/ Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
MADDIN, HAUSER, ROTH & HELLER, P.C.
*Attorneys for Defendants, Roxanne Seeber and Catherine Kaufman*
28400 Northwestern Hwy, 2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com

Dated: March 1, 2024

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SOIL FRIENDS LLC, a Michigan
limited liability company;
BENJAMIN MARTIN, an individual;          Case No. 1:23-cv-1267

             Plaintiffs,          Honorable Jane M. Beckering
v.                                       Magistrate Judge Phillip J. Green

COMSTOCK CHARTER TOWNSHIP,
a Michigan municipal corporation;
KALAMAZOO AREA BUILDING AUTHORITY,
a Michigan municipal corporation or agent of
Comstock Township; JODI STEFFORIA; RANDY
THOMPSON; SCOTT HESS; MATTHEW MILLER;
JENNIFER JONES-NEWTON; RON SPORTEL;
ALLAN FAUST; JEFF AMPEY; LARRY NICHOLS;
PATRICK HANNA; CLYDE SHERWOOD III;
ROXANNE SEEBER; and CATHERINE KAUFMAN,

             Defendants.

---

## CERTIFICATE OF COMPLIANCE REGARDING WORD COUNT

Pursuant to LCivR 7.2(a), (b)(ii), I hereby certify that under the word count set forth by LCivR 7.2(b)(i) that Defendants, Roxanne Seeber and Catherine Kaufman's combined motion to dismiss and brief in support was 9,432 words as indicated by Microsoft® Word.

             Respectfully submitted,

             */s/ Kathleen H. Klaus*
             Kathleen H. Klaus (P67207)
             MADDIN, HAUSER, ROTH & HELLER, P.C.

*Attorneys for Defendants, Roxanne Seeber and Catherine Kaufman*
28400 Northwestern Hwy, 2nd Floor
Southfield, MI 48034
(248) 359-7520
kklaus@maddinhauser.com

Dated: March 1, 2024

---

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2024 I electronically served the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case.

 */s/ Kathleen H. Klaus*
Kathleen H. Klaus (P67207)
Maddin, Hauser, Roth & Heller, P.C.
*Attorneys for Defendants, Roxanne Seeber and Catherine Kaufman*
28400 Northwestern Highway, 2nd Floor
Southfield, MI  48034
(248) 359-7520
kklaus@maddinhauser.com

DATED: March 1, 2024

---