UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOIL FRIENDS LLC, BENJAMIN MARTIN,
and SARAH MARTIN,

      Plaintiffs,                          Case No. 1:23-cv-1267

v.                                    HON. JANE M. BECKERING

CHARTER TOWNSHIP OF COMSTOCK, et
al.,

      Defendants.

_____/

## OPINION AND ORDER

Plaintiffs allege a plethora of claims under federal and state law stemming from a long running dispute with officials of Defendant Charter Township of Comstock ("the Township") regarding zoning and property rights.  Plaintiffs sued sixteen Defendants:  the Township, the Township's officials, the members of the Township Planning Commission, the local building department, and the two private sector attorneys who represented those Defendants.  Now pending before the Court are Defendants' motions to dismiss (ECF Nos. 23 & 25).  For the following reasons, the Court grants their motions as to Plaintiffs' federal claims, dismisses the motions as moot as to Plaintiffs' state-law claims, and closes this case.

### I.  BACKGROUND

### A.  Factual Background

### 1.  Plaintiffs' Business Expansion (2017–19)

Plaintiffs Benjamin and Sarah Martin own Soil Friends, LLC ("Soil Friends"), a 22-acre farm located in an agricultural-residential zoning district in the Township (First Amended

Complaint [FAC, ECF No. 20] ¶¶ 1–3, & 27–28).  In 2017, Plaintiffs applied to the Michigan Liquor Control Commission ("MLCC") for a small winemaker license (10/12/2017 Memo to Township Board [Pls. Ex. 4 to FAC, ECF No. 20-4]).  As part of the application process, Plaintiffs were required to obtain a recommendation from the Township (*id.*).  Township Community Development Director Jodi Stefforia reviewed their request and indicated that she was "inclined to find it accessory to the existing use of the property and/or a 'similar bona fide agricultural enterprise or use of land and structures,'" noting that "wine will be sold to retail customers in the farm market with the other items" (*id.*).  On October 16, 2017, the Township unanimously recommended that Plaintiffs' application for a small winemaker license with the MLCC be approved (10/16/17 Approval [Pls. Ex. 3 to FAC, ECF No. 20-3]).  Plaintiffs allege that on December 19, 2018, the MLCC issued Plaintiffs a small winemaker license and an on-premises tasting room permit (FAC ¶ 33).  Plaintiffs further allege that in June 2018 and again in May 2019, the MLCC issued Plaintiffs permits for two outdoor service areas (*id.* ¶ 34).

At some point in 2019, Plaintiffs built a new barn ("the Barn") (*id.* ¶ 36).  Plaintiffs indicate that they started using the Barn as a farm market and for hard cider tastings (*id.* ¶ 43).  Plaintiffs do not indicate in their First Amended Complaint whether they sought or received a building permit for constructing the Barn.

**2.**     **The Township's Citation & Enforcement (2022)**

On April 1, 2022, Stefforia sent Plaintiffs an email message with the subject line "Approval for expanded activity" (4/1/22 Email [Pls. Ex. 5 to FAC, ECF No. 20-5]).  Stefforia indicated that the Township had "become aware that you are offering the opportunity to hold private events and parties or rent your barn/property for such events" (*id.*).  She indicated that "[t]his use … is allowed but requires special exception use approval of the Planning Commission" (*id.*).  She further

indicated that "[u]se of the barn for private parties, etc. warrants a review by the Building Official to make sure all applicable building code provisions are satisfied," and she encouraged Plaintiffs to contact Mike Alwine of the Kalamazoo Area Building Authority ("KABA") (*id.*).  She indicated that they could work together to "package" a single application for the special exception use to include both the Barn and any planned outdoor events (*id.*).  Alwine, who was copied on the email, informed Plaintiffs that same day that their proposed use would constitute a Change of Occupancy category that requires a Code Compliance design by a registered design professional demonstrating compliance with various code provisions (*id.*).

In May 2022, the MLCC renewed Soil Friends' small winemaker license and permits for its on-premises tasting room permit and two outdoor service areas effective May 1, 2022 through April 30, 2023 (5/1/22 MLCC License [Pls. Ex. 1 to FAC, ECF No. 20-1).  The Michigan Department of Agriculture also issued Soil Friends a License as a "Retail Food Establishment" also through April 30, 2023 (5/1/22 MDAG License [Pls. Ex. 2 to FAC, ECF No. 20-2]).

On September 20, 2022, Alwine emailed Plaintiffs again, noting that two matters remained outstanding for their proposed change of occupancy: the need for a drinking fountain and an accessible route to the public parking area (9/20/22 Email [Pls. Ex. 7 to FAC, ECF No. 20-7]).

On October 19, 2022, the Township initiated a case against Soil Friends in the 8th District Court for the County of Kalamazoo with the filing of a citation declaring that Soil Friends did not have "zoning approval or permits for how barn is being used to serve Food/alcohol/Live Music" (FAC ¶ 54; Citation [Pls. Ex. 8 to FAC, ECF No. 20-8]) (*Comstock Charter Twp. v. Soil Friends, LLC*, Case No. 22C40157 ["the District Court case"]).  The District Court case was assigned to District Court Judge Christopher T. Haenicke and Magistrate Nicholas J. Schaberg.

The Township Planning Commission held a meeting on October 27, 2022 (10/27/22 Minutes [Pls. Ex. 10 to FAC, ECF No. 20-10]).  Present at the meeting were Commission members Jeff Ampey, Allan Faust, Patrick Hanna, Jennifer Jones-Newton, Larry Nichols, and Ron Sportel (*id.*).  Also present were Stefforia and Township Attorney Catherine Kaufman (*id.*).  At the conclusion of the meeting, Stefforia asked about "interest in pursuing ordinance amendments that would allow for agritourism in the agricultural district" and mentioned Plaintiffs' business (*id.* at PageID.367).  One Commission member asked what was "happening at the site now that that the ordinance may or may not address," and Stefforia answered "hot food, alcohol sales, bar and live music and possibly other activities" (*id.*).  Stefforia indicated that she would work with attorney Kaufman to gather information to share at a future meeting (*id.*).

Plaintiffs allege that on October 31, 2022, Township Supervisor Randy Thompson requested that Plaintiffs take down certain Facebook posts they had made because the posts placed the Township "in a negative light and would cause further issues" (FAC ¶¶ 7, 205–06; *see, e.g.,* 10/20/22 Facebook Post [Pls. Ex. 9 to FAC, ECF No. 20-9]).  Plaintiffs allege that they instead "continued to post on Facebook statements that criticized" the Township, KABA, Stefforia, Thompson, and Township Superintendent Hess (FAC ¶ 207; *see, e.g.,* 11/30/22 & 12/7/22 Facebook Post [Pls. Exs. 12 & 15 to FAC, ECF Nos. 20-12 & 20-15]).

 A hearing was held on Plaintiffs' citation on November 18, 2022 in District Court before Magistrate Schaberg (11/18/22 District Court Order [Pls. Ex. 11 to FAC, ECF No. 20-11]).  Attorney Roxanne Seeber appeared on behalf of the Township (*id.*).  Following the hearing, Magistrate Schaberg issued an Order indicating that Soil Friends "was found responsible" for violating both the Township's Zoning Ordinance and the Unlawful Building Provisions of the State Construction Code as administered and enforced by the Township (*id.*).  In addition to

4

imposing fines and costs, Magistrate Schaberg required Plaintiffs to limit use of the Barn to agricultural activities, only, until they complied with all Township zoning ordinances and building requirements (*id.*). The Order provided that "[i]f the [Plaintiffs] wishe[d] to undertake any activity other than agricultural use," then they had to "first apply for and obtain zoning approval, if available, for the use" (*id.*). The Order further provided that "[i]f the [Plaintiffs] obtain[ed] zoning approval for any use that allows access to the Barn by anyone other than immediate family and farm laborers," then they had to "obtain an after-the-fact building permit from the Township's Building Department, KABA" (*id.*). The Order directed that "[t]here shall be no occupancy of the barn for anything other than sole agricultural use unless and until the building department has undertaken inspections and certified it as compliant with the building code and safety standards and has allowed occupancy thereof" (*id.*).

On December 2, 2022, the Township issued a "Statement" for immediate release, pointing out that Plaintiffs had constructed the Barn "without building permits" and explaining that Plaintiffs' operation was "not 'shut down,'" that agricultural use of the property continues, and that only the commercial aspect of the site was required to cease "until zoning and building code approval is obtained through the formal process expected of any other business in Comstock Township" (12/2/22 Statement [Pls. Ex. 13 to FAC, ECF No. 20-13]).

Plaintiffs allege that on December 5, 2022, attorney Kaufman attended a Township Board meeting in her capacity as attorney for the Township and that at this meeting Kaufman stated that (1) Plaintiffs' "additional uses were not covered by their MLCC license" and (2) the Township's prior approval of Plaintiffs' application for a liquor license "was conditioned solely under the Right to Farm accessory agricultural use" (FAC ¶¶ 104 & 107).

Following the meeting, on December 7, 2022, Stefforia sent Plaintiffs a letter summarizing "what [was] needed to bring [their] operations" into compliance with the Township zoning ordinances and indicating that Plaintiffs could presently apply for a special exception use permit or wait to apply until after certain text amendments under consideration by the Commission about cideries and agritourism were approved (12/7/22 Letter [Pls. Ex. 14 to FAC, ECF No. 20-14]).

Instead, on January 18, 2023, Plaintiffs filed in Kalamazoo County Circuit Court a Complaint for Superintending Control against the District Court (FAC ¶ 113) (*In re. Soil Friends, LLC*, Case No. 23-0019-AS ["the Circuit Court case"]).  Plaintiffs alleged that Magistrate Schaberg had "exceeded" his authority, violated due process, and "ignored" Michigan law (Circuit Court Compl. [Pls. Ex. 16 to FAC, ECF No. 20-16]).  Plaintiffs requested, in pertinent part, that the circuit court vacate Magistrate Schaberg's November 18, 2022 Order (*id.*).

On February 21, 2023, in the District Court case, the parties entered into a "Stipulated Amended Order Requiring Compliance with Ordinance," which Magistrate Schaberg entered (FAC ¶ 117).  In the Stipulated Order, Magistrate Schaberg indicated that Plaintiffs had complied with the requirement to eliminate commercial use and access to the Barn (2/21/23 Stip. Order [Pls. Ex. 17 to FAC, ECF No. 20-17]).  The Order continued to prohibit Plaintiffs from operating a commercial business entity inside the Barn until such time as "all required zoning and building requirements" were satisfied, but the Order permitted certain activities related to the sale of produce, wine/cider, and food outside of the Barn (*id.*).  The Order indicated that Plaintiffs would submit an application for a special exception with the Township, which the Township would review in good faith and process without undue delay (*id.*).  That same day, Plaintiffs dismissed their Complaint for Superintending Control in the Circuit Court case (2/21/23 Dismissal [Defs. Seeber & Kaufman's Ex. 2, ECF No. 23-3]).

3.    __The Commission's Conditional Aproval of Plaintiffs' Special Use Exception__ (2023)

On March 2, 2023, Stefforia emailed Plaintiffs with "initial review comments" on their application and attached a letter from the Fire Marshal indicating that the site plan could be "approved with [certain] requirements" being satisfied (3/2/23 Email [Pls. Ex. 18 to FAC, ECF No. 20-18]).

The Township Planning Commission held a meeting on April 13, 2023 (4/13/23 Minutes [Pls. Ex. 19 to FAC, ECF No. 20-19]).  Present at the meeting were Commission members Ampey, Faust, Hanna, Jones-Newton, Nichols, Bub Sherwood, and Sportel (*id.*).  Also present were Stefforia and Township Attorney Kaufman (*id.*).  At the meeting, the Commission considered Plaintiffs' special exception use application and site plan for a winery and tasting room (*id.*).  The motion to vote on the application was not unanimously carried and therefore failed (*id.* at PageID.436).  The Minutes reflect that the Commission wanted confirmation about several items, including the "adequacy of Plaintiffs' well and septic for the size of the operation," approval from the Fire Department, and a statement that ADA-compliant bathrooms would be provided (*id.*).

The Township Planning Commission held another meeting on April 27, 2023 (4/27/23 Minutes [Pls. Ex. 21 to FAC, ECF No. 20-21]).  Present at the meeting were Commission members Ampey, Faust, Hanna, Jones-Newton, Nichols, Sherwood, and Sportel (*id.*).  Also present were Stefforia and Township Attorney Kaufman (*id.*).  According to the Minutes of the meeting, attorney Kaufman informed the Commission that Plaintiffs had supplied approval from the health department about the well and septic system and an updated site plan as to the ADA spaces and had contacted the road commission (*id.* at PageID.446).  The Minutes further reflect that Plaintiffs expressed frustration that the Commission was "making up rules on the fly" and opined that the Commission should "look at the MLCC rules" (*id.* at PageID.447–448).  According to the Minutes,

a Commission member explained that even if the MLCC approves a license, the license holder is still required to meet the local zoning requirements and regulations (*id.* at PageID.447).  The Commission ultimately approved Plaintiffs' special exception use in a unanimous vote, subject to certain conditions such as business hours and noise and lighting considerations (4/27/23 Minutes at PageID.449; FAC ¶ 141).  The Commission also approved the site plan, subject to approval by the Fire Department and the Kalamazoo County Road Commission (4/27/23 Minutes at PageID.449; FAC ¶ 142).

Also on April 27, 2023, the MLCC held a meeting and approved Plaintiffs' application to "redefine" their licensed premises to include the Barn and permit sales on Sundays (MLCC 4/27/23 Approval Order [Defs. Seeber & Kaufman's Ex. 3, ECF No. 23-4]).  Noting that the licensee was currently in litigation with the Township, the MLCC expressly indicated in its Order that "[a]pproval of the request does not waive the requirement that the licensee be in compliance with all state and local building, plumbing, zoning, sanitation, and health laws, rules, and ordinances, nor does this approval allow the licensee to violate any order of the court" (*id.* at PageID.532).  The MLCC referenced the governing administrative rule, which provides that a "licensee shall comply with all state and local building, plumbing, zoning, sanitation, and health laws, rules, and ordinances as determined by the state and local law enforcement officials who have jurisdiction over the license," and the licensee "must obtain all other required licenses, permits, and approvals *before opening the business for operation*" (*id.* at PageID.533) (emphasis added).

On May 22, 2023, Plaintiffs emailed Alwine about the approvals they had received from the Commission and indicated that they would "like to move forward with purchasing the building permits to allow guest[s] into [their] wine tasting room" (5/22/23 & 5/23/23 Emails [Pls. Ex. 23 to FAC, ECF No. 20-23]).  On May 23, 2023, Alwine responded and indicated that because Plaintiffs'

previous application was for a "wedding venue/farm market," a new application for their "wine tasting room" was necessary (*id.*).

Plaintiffs allege that on or about June 8, 2022, "Soil Friends was told by MLCC that an individual on behalf of Comstock Township informed MLCC that Soil Friends did not have approval to manufacture wine/cider in the Barn" (FAC ¶ 150).  Plaintiffs attribute this statement to Superintendent Hess (*id.* ¶¶ 8 & 151).

On June 30, 2023, Plaintiffs filed a Motion for Order to Show Cause in the District Court case, requesting that the Township be held in contempt (6/30/23 Motion [Defs. Seeber & Kaufman's Ex. 5, ECF No. 23-6; Twp. & KABA Defs. Ex. B, ECF No. 26-3]).  The Township opposed the motion (7/11/23 Answer [Defs. Seeber & Kaufman's Ex. 6, ECF No. 23-7; Twp. & KABA Defs. Ex. C, ECF No. 26-4]).  Following a hearing on August 21, 2023, District Court Judge Haenicke denied Plaintiffs' motion "for the reasons stated on the record" (9/1/23 Order [Defs. Seeber & Kaufman's Ex. 7, ECF No. 23-8; Twp. & KABA Defs. Ex. D, ECF No. 26-5]).

## B.  Procedural Posture

On December 1, 2023, Plaintiffs initiated this action with the filing of a Complaint (ECF No. 1).  On February 16, 2024, Plaintiffs filed a First Amended Complaint, naming sixteen Defendants: the Township, Stefforia, Thompson, Hess, Matthew Miller, Jones-Newton, Sportel, Faust, Ampey, Nichols, Hanna, Sherwood (collectively "the Township Defendants"); KABA and Alwine (collectively "the KABA Defendants"); and Township attorneys Seeber and Kaufman (ECF No. 20).  In pertinent part, Plaintiffs allege that Soil Friends' "service of food, alcohol and the ability to have live music, is governed by the State of Michigan, pursuant to Soil Friends' MLCC winemaker license" (*id.* ¶ 92).  They allege that the Township "did not have the authority to restrict the service of food, alcohol and the ability to have live music, because Michigan law

preempted any local ordinance with regard to these matters" (*id.* ¶ 93).  According to Plaintiffs, "Defendants … and others pursued a course of action wherein they tried to interfere with Soil Friends' legal rights to operate under Michigan Law and its MLCC winemaker license" (*id.* ¶ 94). Plaintiffs allege the following twelve claims:

    I.    First Amendment Retaliation

    II.    Unconstitutional Conditions

    III.    Violation of Due Process

    IV.    Regulatory Takings

    V.    Conspiracy to Interfere with Civil Rights

    VI.    State Law Preemption by Michigan Liquor Control Code

    VII.    State Law Preemption by Michigan Right to Farm Act

    VIII.    Tortious Interference with a Business Relationship or Expectancy under State Law

    IX.    Defamation under State Law

    X.    Violation of Michigan's Open Meetings Act, MICH. COMP. LAWS § 15.261 *et seq.*

    XI.    Intentional Infliction of Emotional Distress under State Law

    XII.    Civil Conspiracy

(ECF No. 20).

On March 1, 2024, Defendants Seeber and Kaufman filed their motion to dismiss (ECF No. 23).  Plaintiffs filed a response in opposition (ECF No. 31), and Defendants Seeber and Kaufman filed a reply to the response (ECF No. 33).  On March 1, 2024, the Township and KABA Defendants filed a joint motion to dismiss (ECF No. 24, as corrected by ECF No. 25).  Plaintiffs filed a response in opposition (ECF No. 30), and the Township and KABA Defendants filed a

reply to the response (ECF No. 32).   Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented.   *See* W.D. Mich. LCivR 7.2(d).

## II.  ANALYSIS

### A.  Motion Standards

**1.** **Rule 12(b)(1)**

Defendants' motions are filed pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6).  Rule 12(b)(1) authorizes the court to dismiss a claim for relief in any pleading if the court "lack[s] subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1).  If a movant challenges the court's subject-matter jurisdiction under Rule 12(b)(1), then "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Houchens v. Beshear*, 850 F. App'x 340, 342 (6th Cir. 2021).  "Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties"—a facial attack or a factual attack. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  "In a facial attack, a 'movant accepts the alleged jurisdictional facts as true and 'questions merely the sufficiency of the pleading' to invoke federal jurisdiction.'" *Polselli v. United States Dep't of the Treasury–Internal Revenue Serv.*, 23 F.4th 616, 621 (6th Cir.) (citations omitted), aff'd sub nom. *Polselli v. Internal Revenue Serv.*, 598 U.S. 432 (2023).  "In a factual attack, a movant presents evidence outside of the pleadings to contest jurisdictional facts alleged in the petitions." *Id.*  In reviewing a facial attack, "a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss.  On the other hand, when a court reviews a complaint under a factual attack …, no presumptive truthfulness applies to the factual allegations." *Ohio Nat. Life, supra.*

2.      **Rule 12(b)(6)**

Rule 12(b)(6) authorizes the court to dismiss a claim for relief in any pleading if it "fail[s] to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss, a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Although the plausibility standard is not equivalent to a "'probability requirement,' … it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the non-movant and accept all well-pleaded factual allegations in the complaint as true. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss for failure to state a claim, the Court generally does not consider matters outside the pleadings unless the Court treats the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated

as one for summary judgment under Rule 56.").  On the other hand, the Court may, as here, consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment."  *See Gavitt, supra.*

### B.   Discussion

The Court turns first to considering the arguments for dismissal of Plaintiffs' federal claims in Counts I through V, which form the bases for the Court's original jurisdiction over the subject matter of this case.

### 1.    Plaintiffs' Federal Claims Against Defendants Seeber and Kaufman

Defendants Seeber and Kaufman, the Township attorneys, are referenced in Counts I, III, V, VIII, XI, and XII of Plaintiffs' First Amended Complaint.  Defendants Seeber and Kaufman argue under Federal Rule of Civil Procedure 12(b)(1) that Plaintiffs' federal civil rights claims against them in Counts I, III, and V should be dismissed because they are barred by absolute immunity (ECF No. 23 at PageID.495–500).[1]

In response, Plaintiffs argue that Defendants Seeber and Kaufman "cannot avail themselves of the claims to privilege or immunity" because they were not acting solely in a prosecutorial capacity (ECF No. 31 at PageID.723, 737–740).  Plaintiffs also opine that applying absolute immunity to the facts of this case, where Defendants' conduct was "barred by state law" and/or

---

[1] Defendants Seeber and Kaufman also argue that Plaintiffs' claims against them should be dismissed based on application of the *Rooker-Feldman* doctrine and/or failure to state any claim upon which relief may be granted (ECF No. 23 at PageID.500–510).  Given the Court's resolution of the immunity issue and decision to decline supplemental jurisdiction over the state-law claims, the Court declines to consider their alternative arguments for dismissal.

because Defendants "knew [their] actions were illegal," would result in a "miscarriage of justice" (*id.* at PageID.740–741).

The federal claims against Defendants Seeber and Kaufman are properly dismissed.

Absolute prosecutorial immunity is a common-law doctrine that shields prosecutors from liability under the federal civil rights laws.  *Imbler v. Pachtman*, 424 U.S. 409, 427–31 (1976). The Supreme Court has indicated that "[a]bsolute immunity is designed to free the *judicial process* from the harassment and intimidation associated with litigation." *Watts v. Burkhart*, 978 F.2d 269, 273 (6th Cir. 1992) (quoting *Burns v. Reed,* 500 U.S. 478, 494 (1991) (emphasis in original)).  The immunity of participants in the judicial process stems not from the "location" of the judicial process in one branch of government or another but from the "characteristics" of the process.  *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 512 (1978)).  The Supreme Court has held that because litigation is often "intense," and the "loser, given an opportunity to do so, will frequently charge the participants in the process with unconstitutional animus," absolute immunity is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation."  *Id.* (quoting *Butz*, 438 U.S. at 512).

The Supreme Court endorses a "functional approach" for determining whether an official is entitled to absolute prosecutorial immunity, explaining that a court should look to the "nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988).  The functional approach focuses on whether the prosecutor's activities are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. The Sixth Circuit has explained that the "analytical key to prosecutorial immunity … is advocacy—whether the actions in question are those of an advocate." *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).  If the challenged actions of the prosecutor were not performed in

14

her role as advocate, i.e., if they "do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings," then only "[q]ualified immunity" applies. *Id.* (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993)).

The Sixth Circuit has previously held that attorneys for a municipality who pursue a civil action for public nuisance and ordinance violations are entitled to absolute immunity "when their duties are functionally analogous to those of a prosecutor's regardless of whether those duties are performed in the course of a civil or criminal action." *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000) (citation omitted). "[A]s long as the prosecutors were functioning in an enforcement role and acting as advocates for the state in initiating and prosecuting judicial proceedings, they are entitled to an absolute immunity defense." *Id.*

Here, it is undisputed that, at all times relevant in this case, Defendants Seeber and Kaufman were private sector attorneys acting in their capacities as attorneys for the Township Defendants. *See* FAC ¶¶ 18–19, 61, 72–73, & 104. In their capacities as attorneys for the Township Defendants, they pursued Plaintiffs' ordinance violations and assisted the Township and its Planning Commission and building officials in connection with Plaintiffs' application for a special use exception. Plaintiffs describe Defendants' involvement as "initiating and pursuing an enforcement action to ensure compliance with local zoning ordinances," appearing at the hearing in the District Court case, and preparing a proposed Compliance Order "tantamount to an injunction" that was entered by the District Court magistrate (FAC ¶¶ 263–64). The Court concludes that the actions about which Plaintiffs complain were taken in connection with pursuing and enforcing Plaintiffs' ordinance violations and are functionally analogous to those of a prosecutor and therefore entitle them to absolute immunity.

Plaintiffs' view of how Defendants Seeber and Kaufman applied state law in this case does not compel a different conclusion.  Defendants Seeber and Kaufman are absolutely immune from suit in connection with these actions even if their actions were wrongful or malicious.  The decision to prosecute an ordinance violation, even if malicious, enjoys absolute immunity.  *See Burns*, 500 U.S. at 492–93.  "So 'strong' is the 'medicine' of absolute immunity that it does not delve into a prosecutor's motive."  *Stockdale v. Helper*, 979 F.3d 498, 505 (6th Cir. 2020) (quoting *Forrester*, 484 U.S. at 230).  *See, e.g.*, *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997) (holding that even the commission of "grave procedural errors" by a judge exercising his or her authority will not strip the judge of the shield of absolute judicial immunity) (citing *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)).  The Sixth Circuit has explained that "the judicial process is largely self-correcting: procedural rules, appeals, and the possibility of collateral challenges obviate the need for damages actions to prevent unjust results."  *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 522–23 (1985)).

In short, Plaintiffs' federal claims against Defendants Seeber and Kaufman in Counts I, III, and V are properly dismissed with prejudice.

**2.**     **Plaintiffs' Federal Claims Against the Township & KABA Defendants**

The Township and KABA Defendants argue that the individual Defendants (Stefforia, Thompson, Hess, Matthew Miller, Jones-Newton, Sportel, Faust, Ampey, Nichols, Hanna, Sherwood, and Alwine) are entitled to dismissal of Plaintiffs' constitutional claims against them because they are entitled to qualified immunity (ECF No. 26 at PageID.620–623). The Township and KABA Defendants argue that Plaintiffs' allegations do not state a claim upon which relief can be granted under the First, Fifth, or Fourteenth Amendments (*id.* at PageID.623).  The Township and KABA Defendants argue that even if the allegations give rise to any constitutional violations,

16

Plaintiffs cannot offer any case law to prove violation of a clearly established right under the particularized circumstances alleged where the Township and KABA (through the individually named Defendants) "merely acted pursuant to multiple State Court orders that required Plaintiffs to satisfy all required zoning and building approvals before using the [Barn] as a winery tasting room" (ECF No. 26 at PageID.623).[2]

In response, Plaintiffs argue that the individual Defendants[3] are not entitled to qualified immunity (ECF No. 30 at PageID.694).  Plaintiffs argue that their "allegations, taken as a whole, establish that the Defendants, known and unknown, sought to retaliate against Plaintiffs by, at minimum, delaying them from receiving their special exception use approval with a clear goal of effectively ruining Plaintiffs' business in its entirety" (*id.* at PageID.701).

The federal claims against the Township and KABA Defendants are properly dismissed.

Section 1983 makes "liable" "[e]very person" who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]"  42 U.S.C. § 1983.  Section 1983 does not confer substantive rights but merely provides a statutory vehicle for vindicating rights found in the United States Constitution.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1160 (6th Cir. 2021).  To bring a claim under § 1983, a plaintiff must "identify a

---

[2] The Township and KABA Defendants also briefly argue that certain of Plaintiffs' claims against them should be dismissed based on application of the *Rooker-Feldman* doctrine (ECF No. 26 at PageID.620), the duplicative nature of the claims (*id.* at PageID.624–626), and/or the application of governmental immunity (*id.* at PageID.626–628).  Given the Court's resolution of the qualified immunity issue and decision to decline supplemental jurisdiction over the state-law claims, the Court declines to consider their alternative arguments for dismissal.

[3] By way of clarification, Plaintiffs indicate that while they named the Township and KABA as Defendants, they are "seeking a course of action against the individuals themselves," as evidenced by their omission of a § 1983 *Monell* claim in both their Complaint and First Amended Complaint (ECF No. 30 at PageID.708–709).

17

right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (citation omitted).  Plaintiffs identify deprivations of their First, Fifth and Fourteenth Amendment rights in Counts I, II, III, and IV.[4]

Additionally, in Count V, Plaintiffs allege a conspiracy to interfere with their civil rights. The civil-conspiracy prohibition contained in § 1985(3) was enacted as a significant part of the civil rights legislation.  *Ziglar v. Abbasi*, 582 U.S. 120, 150 (2017).  The statute imposes liability on two or more persons who "conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3).

Qualified immunity is an absolute defense to civil rights claims under 42 U.S.C. § 1983, *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010), and claims of conspiracy to commit civil rights violations, 42 U.S.C. § 1985(3), *Ziglar*, 582 U.S. at 155 (holding that the petitioners were entitled to qualified immunity with respect to the § 1985(3) claims).  *See, e.g., Bettio v. Vill. of Northfield*, 775 F. Supp. 1545, 1566 (N.D. Ohio 1991) (finding that the defendant-village officials were entitled to qualified immunity on the plaintiff's §§ 1983 and 1985 claims).

The Supreme Court has held that a defendant asserting qualified immunity is entitled to dismissal before the commencement of discovery "[u]nless the plaintiff's allegations state a claim of violation of clearly established law[.]" *Mitchell*, 472 U.S. at 526.  Hence, the Sixth Circuit has instructed that district courts have a "duty" to address qualified immunity when it is "properly raised prior to discovery." *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 758 (6th Cir. 2022)

---

[4] As the Sixth Circuit has pointed out, "[t]he United States Constitution does not contain an Unconstitutional Conditions Clause." *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 911 (6th Cir. 2019).  However, the Court has presumed that Plaintiffs intend to rely on the due process guarantees in the Fifth and Fourteenth Amendments for their claim in Count II.

(citation omitted).  Qualified immunity shields government defendants from not only liability but also litigation and discovery because "[i]nquiries of this kind can be peculiarly disruptive of effective government." *Id.* (quoting *Harlow*, 457 U.S. at 817).  The purpose of the defense is to strike a balance that "accommodates the tension between permitting litigants to recover damages, which is often the only realistic avenue for vindication of constitutional guarantees, and the social costs of such suits, including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quotation marks and citation omitted).  "The entitlement is an *immunity from suit* rather than a mere defense to liability [because] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526 (emphasis in original).

"A defendant is not entitled to qualified immunity at the pleadings stage if (1) 'the facts alleged make out a violation of a constitutional right' and (2) that right 'was clearly established when the event occurred so that a reasonable offic[ial] would have known that his conduct violated it.'" *Myers*, 41 F.4th at 757 (quoting *Crawford v. Tilley*, 15 F.4th 752, 762–63 (6th Cir. 2021)).  Courts may address these two prongs in either order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  However, both questions "must be answered in the affirmative for the plaintiff's claim to proceed." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).  "[The] plaintiff bears the burden of overcoming [the defense of] qualified immunity." *Crawford*, 15 F.4th at 760.

Here, like the Township and KABA Defendants, the Court limits its qualified-immunity analysis to the second question: whether the rights at issue were clearly established.  Plaintiffs bear the burden to demonstrate that the individually named Defendants violated a right that was so clearly established that a reasonable officer confronted with the "same situation" would have

known that his conduct violated that right. *Johnson v. Mosley*, 790 F.3d 649, 653 (6th Cir. 2015).

The Court "must examine the particular situation that [the defendants] confronted and ask whether

the law clearly established that their conduct was unlawful." *Howse v. Hodous*, 953 F.3d 402, 407

(6th Cir. 2020). It is not necessary that there be a case with the exact same fact pattern, or even

fundamentally similar or materially similar facts. *Murray v. Ohio*, 29 F.4th 779, 790 (6th Cir.

2022) (citation omitted). What is important is that the law provided the defendants with "fair

warning that their actions were unconstitutional." *Id.* (citation omitted). In other words, "existing

precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-

Kidd*, 563 U.S. 731, 741 (2011). "Qualified immunity gives government officials breathing room

to make reasonable but mistaken judgments about open legal questions" and "protects 'all but the

plainly incompetent or those who knowingly violate the law.'" *Id.* at 743 (quoting *Malley v.

Briggs*, 475 U.S. 335, 341 (1986)).

As a threshold matter, despite having already amended their Complaint once, Plaintiffs'

identification of the specific conduct of each individual Defendant at issue in their federal claims

is extremely thin.[5] Plaintiffs' allegations (and their response to the motion) mostly reference

actions by "Defendants" in general, making it difficult to always identify the precise conduct at

issue. "[I]t is well-settled that qualified immunity must be assessed in the context of each

individual's specific conduct." *Hopper v. Phil Plummer*, 887 F.3d 744, 756 (6th Cir. 2018)

(citation omitted). *See also Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) ("[T]o establish

liability and to overcome a qualified immunity defense, an individual must show that his or her

---

[5] Indeed, Plaintiffs did not specify which of the sixteen Defendants they named in this case were associated with any particular count. For purposes of analyzing these federal claims, the Court has presumed that Plaintiffs intended to allege that all of the individual Township and KABA Defendants violated their First, Fifth, and Fourteenth Amendment rights.

own rights were violated, and that the violation was committed *personally* by the defendant.") (emphasis in original).

Regarding their claims in Counts II through V, Plaintiffs wholly fail to argue—let alone identify—a case with sufficiently similar facts that would have provided fair warning to each individual Defendant that his or her respective alleged conduct (or conspiracy to commit such conduct) unlawfully violated Plaintiffs' rights under the Fifth or Fourteenth Amendments. *See, e.g., Lawrence v. Chabot*, 182 F. App'x 442, 452 (6th Cir. 2006) (affirming the district court's dismissal on grounds of qualified immunity where the plaintiff "failed to argue, much less provide any case law to demonstrate, that the defendants violated clearly established constitutional rights").

With regard to their First Amendment claim in Count I, Plaintiffs assert that the actions of the "Township, KABA, and its officials against Plaintiffs unquestionably mirror those of the plaintiff in *Fritz* [*v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010)]" (ECF No. 30 at PageID.703). However, aside from the obvious similarity in naming the same township, the zoning dispute in *Fritz* has significant factual differences from Plaintiffs' allegations in this case.

*Fritz* was an independent agent for Farm Bureau Insurance Company who worked from her home office. *Id.* at 720. She alleged that in retaliation for her public comments at public meetings and in the press via letters to the editor, the township supervisor called her supervisor on three occasions, "warning Farm Bureau that its presence in the community would be jeopardized if [Fritz] did not refrain from [her speech] in the future." *Id.* at 723. Fritz also alleged that she was denied zoning and signage variances in retaliation for her protected conduct. *Id.* at 723, 725.

With regard to the township official's phone calls to Farm Bureau, the Sixth Circuit agreed that the calls constituted adverse action for purposes of Fritz's § 1983 First Amendment retaliation claim as "few aspects of one's life are more important than gainful employment, [and] it is likely

21

that a person of ordinary firmness would be deterred by this conduct." *Id.* at 728.  However, regarding the defendants' denial of her requests for variances, the Sixth Circuit was not convinced that such conduct constituted adverse action.  The panel pointed out that after her variances were denied, Fritz continued to publicly criticize Comstock officials and attend public meetings, which suggested to the panel that Fritz herself was "neither deterred nor chilled from speaking." *Id.*  The Sixth Circuit noted that while "actual deterrence on the part of the plaintiff is not necessary to state a claim of an adverse action," courts must "be careful to ensure that real injury is involved, lest we 'trivialize the First Amendment' by sanctioning a retaliation claim even if it is unlikely that the exercise of First Amendment rights was actually deterred." *Id.* (citation omitted).  A majority of the Sixth Circuit ultimately concluded that, given the combination of the threating telephone conversations and the denial of variances, the district court had erred in ruling that Fritz had not alleged an adverse action on the motion to dismiss.  *Id.* at 729.

The Sixth Circuit has since held that "*Fritz* does not stand for the proposition that defamatory statements alone are sufficient. Instead, the defamatory statements *and* the encouragement of termination were sufficient." *Hilton v. Mish*, 720 F. App'x 260, 265 (6th Cir. 2018) (emphasis added).  *See also Stockdale*, 979 F.3d at 507 (6th Cir. 2020) (acknowledging that "*Fritz* called the question a 'close' one that turns on whether an official 'ha[d] the power to substantially affect' the employer's 'ability to do business in' the city").

Here, Plaintiffs' allegations do not concern any facts analogous to the repeated telephone calls to Fritz's supervisor, nor do Plaintiffs' allegations even concern a denial of their application for a special exception use.  In this case, the Planning Commission conditionally approved Plaintiffs' application.  The Court concludes that the decision in *Fritz* therefore does not constitute precedent that "places the constitutional question beyond debate."  The Sixth Circuit's holding in

*Fritz* would not have served to give fair warning to each individual Defendant in this case that his or her respective (albeit ill defined) conduct constituted a violation of Plaintiffs' rights under the First Amendment.

In sum, Plaintiffs have not demonstrated a clearly established right based on the alleged conduct of each individual Defendant.  Therefore, Plaintiffs have failed to satisfy their burden of overcoming the defense of qualified immunity for the individual Defendants' discretionary decisions at issue in Counts I through V.  "Under *Harlow,* an exercise of such discretion only loses the protection of qualified immunity when a clearly established right has been violated." *Vaughn*, 65 F.3d at 1328.  Therefore, Plaintiffs' federal claims in Counts I through V against the Township and KABA Defendants are properly dismissed.

### 3.      Dismissal with Prejudice

"Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects." *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011).  Here, however, Plaintiffs have already had an opportunity to amend their original Complaint.  Further, "[d]ismissal with prejudice and without leave to amend is [ ] appropriate when it is clear ... that the complaint could not be saved by an amendment." *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.* (6th Cir. 2021).  Consequently, the Court will dismiss Plaintiffs' federal claims with prejudice.

### 4.      Dismissal of State-Law Claims

Having resolved the federal claims in this case, the Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims in Counts VI through XII.  *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise

its supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims...."). *See, e.g., Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("Upon dismissing Brooks' federal claims, the district court properly declined to exercise supplemental jurisdiction over Brooks' remaining state-law claims."). Plaintiffs' state-law claims will be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Seeber and Kaufman's Motion to Dismiss (ECF No. 23) is GRANTED as to Plaintiffs' federal claims and DISMISSED AS MOOT as to Plaintiffs' state-law claims.

**IT IS FURTHER ORDERED** that the Township and KABA Defendants' Motion to Dismiss (ECF No. 25) is GRANTED as to Plaintiffs' federal claims and DISMISSED AS MOOT as to Plaintiffs' state-law claims.

**IT IS FURTHER ORDERED**, pursuant to 28 U.S.C. § 1367(c)(3), that this Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims, which are DISMISSED WITHOUT PREJUDICE.

Because this Opinion and Order resolves all pending claims, the Court will also enter a Judgment to close this case. *See* FED. R. CIV. P. 58.

Dated:  September 17, 2024                          /s/ Jane M. Beckering
                                                   JANE M. BECKERING
                                                   United States District Judge